**Electronically Filed
Supreme Court
SCWC-17-0000546
28-APR-2020
07:42 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

ALLAN H. ABIHAI,
Petitioner/Defendant-Appellant.
_____

SCWC-17-0000546

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000546; CR. NO. 1PC151000405)

APRIL 28, 2020

McKENNA, POLLACK, AND WILSON, JJ.,
WITH NAKAYAMA, J., DISSENTING,
WITH WHOM RECKTENWALD, C.J., JOINS

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

On June 9, 2014, Allan H. Abihai ("Abihai"), who was serving a life term of imprisonment for multiple felonies committed in 1984, left the Laumaka Work Furlough Center ("Laumaka") in Honolulu and did not return. On June 29, 2014, Abihai was arrested at a former cellmate's apartment in

Honolulu.  He was later charged with escape in the second degree.

In his jury trial on the escape charge, Abihai raised a choice of evils defense, contending he left Laumaka because he was threatened he would be hurt if he testified in an upcoming federal criminal trial involving a prison gang.  The jury was instructed on the choice of evils defense, then convicted Abihai of escape in the second degree.  The Circuit Court of the First Circuit ("circuit court") imposed a five-year prison term for the escape conviction, to run concurrent to his life sentence for the 1984 felonies, and denied him credit for time served.

Abihai raised two points of error on appeal to the ICA: (1) that trial counsel was ineffective for substantially impairing his choice of evils defense by failing to elicit certain testimony from his witnesses; and (2) that the circuit court erred when it denied him credit for time served on the sentence imposed for the escape conviction.  The ICA affirmed the circuit court's judgment of conviction and sentence.

Abihai raises the same issues on certiorari.  For the reasons below, we resolve Abihai's points of error as follows: (1) Because the record on appeal is insufficient to determine whether there has been ineffective assistance of counsel, we affirm Abihai's conviction without prejudice to a subsequent Hawai'i Rules of Penal Procedure ("HRPP") Rule 40 petition on the

ineffective assistance of counsel claim; and (2) the ICA erred in affirming the circuit court's decision to deny Abihai credit for time served on his escape conviction.  The circuit court's June 14, 2017 judgment of conviction and sentence is therefore affirmed, but the ICA's September 6, 2018 judgment on appeal is vacated, and this matter is remanded to the circuit court for calculation of Abihai's presentence detention credit consistent with this opinion.

## II.  Background

### A.  Factual Background

On June 9, 2014, Abihai, serving a life sentence for multiple felony convictions, left Laumaka on a work furlough but did not return.  On June 29, 2014, Abihai was located at the apartment of a paroled former inmate and arrested for escape by deputy sheriffs from the Department of Public Safety ("DPS").[1]  An investigator in the Department of the Attorney General requested that DPS release Abihai on the escape charge after booking and processing.  Abihai was then taken to the Sheriff Receiving Desk in Honolulu for booking and processing.  After midnight, Abihai was transported to the Oahu Community Correctional Center ("OCCC"); when Abihai complained of pain in

---

[1]   DPS Incident Report #SD1404341 clearly states that Abihai was arrested for Escape in the Second Degree on June 29, 2014.

his ribs, OCCC declined custody until Abihai was medically cleared.  At some point, Abihai was placed back into custody at Halawa Correctional Facility ("Halawa") on his original sentence.

## B.    Circuit Court Proceedings

On March 17, 2015, Abihai was charged by felony information with one count of escape in the second degree in violation of Hawai'i Revised Statutes ("HRS") § 710-1021 (2014).[2]  On the same date, an arrest warrant on the escape charge issued on March 13, 2015, which set bail at $10,000, was executed on Abihai at Halawa and Abihai remained in custody at Halawa.

A jury trial on the escape charge commenced in the circuit court on February 6, 2017.[3]  In opening statements, the State explained that in June 2014, Abihai was accepted into the Work Furlough Program at Laumaka, assigned a case manager, and signed a work furlough agreement.  The State further explained that the evidence would show that on June 9, 2014, Abihai intentionally escaped from Laumaka.

---

[2]    HRS § 710-1021 provides:

> **Escape in the second degree.**  (1) A person commits the offense of escape in the second degree if the person intentionally escapes from a correctional or detention facility or from custody.
>       (2)  Escape in the second degree is a class C felony.

[3]    The Honorable Glenn J. Kim presided.  Abihai's first jury trial ended in a mistrial on November 28, 2016.

In Abihai's opening statement, Abihai's counsel did not dispute that Abihai had escaped; rather, he presented a choice of evils defense and argued that, because Abihai was running for his life, he could not be guilty of escape.[4]  Specifically, Abihai's counsel stated that Abihai's

> life was in danger because members of a giant prison gang and a corrupt [adult corrections officer], his former friend, Feso Malafau believed that he would be testifying in a federal case that was brought against those gang members and that prison guard.  They though he was going to be a snitch or a rat.

Abihai's counsel told the jury that the evidence would demonstrate that (1) Abihai was threatened; (2) his complaints to prison officials were not being addressed; (3) he did not have time to go to the courts to get transferred to a different location; and (4) he did not use force to escape.  Abihai's

---

[4]    The choice of evils defense to an escape charge is set out in HRS § 703-302(3) (2014):

> (3) In a prosecution for escape under section 710-1020 or 710-1021, the defense available under this section is limited to an affirmative defense consisting of the following elements:
> (a)    The actor receives a threat, express or implied, of death, substantial bodily injury, or forcible sexual attack;
> (b)    Complaint to the proper prison authorities is either impossible under the circumstances or there exists a history of futile complaints;
> (c)    Under the circumstances there is no time or opportunity to resort to the courts;
> (d)    No force or violence is used against prison personnel or other innocent persons; and
> (e)    The actor promptly reports to the proper authorities when the actor has attained a position of safety from the immediate threat.

(Emphasis added.)

counsel conceded, however, that Abihai did not try to turn himself in:

> [Y]ou're going to hear that he did not turn himself in. The State is correct.  He didn't call and say, hey, come get me, pick me up.  It was his plan to wait.  He believed he could not be safe until the USO trial, win or lose, was over and they knew he wasn't a snitch or a rat and he failed.  But that's why he didn't turn himself in.

According to the testimony of the State's witnesses at trial, Abihai had escaped when he did not return to Laumaka after leaving the facility for a job on June 9, 2014.  Carolyne Papali'i ("Papali'i"), a social worker at Laumaka, testified that she knew Abihai and was his case manager.  Papali'i explained that she reviewed a work furlough agreement with Abihai in March 2014, and that he signed the agreement, which contained several provisions discussing the consequences should an inmate fail to return to Laumaka in a timely manner.  Papali'i testified that on June 9, 2014, Abihai was supposed to report to Beachside Roofing for work, and was supposed to return to Laumaka at 8:00 p.m. Papali'i further reported that she was told the following morning that Abihai did not return to Laumaka.

Adult Corrections Officer Benjamin Morn ("ACO Morn") also testified that Abihai failed to return to Laumaka on June 9, 2014.  ACO Morn stated that he had reported for duty for the midnight shift at Laumaka at 10:00 p.m. on June 9, 2014, and discovered that Abihai had not returned.  ACO Morn also

testified that he did not receive any call from Abihai reporting where he was or why he was late.

James Mahelona ("Mahelona"), the field representative for Beachside Roofing, testified that he knew Abihai and that on June 9, 2014, Abihai was supposed to show up for work.  Mahelona stated that Abihai did not show up to work and did not call to state that he was not going to show up.

To support his choice of evils defense, Abihai presented testimony from witnesses regarding his involvement in the federal criminal trial of the USO Family Gang,[5] which began in September 2014.

Assistant U.S. Attorney Thomas Brady ("AUSA Brady") testified that he approached Abihai in September 2014 to ask if he would testify against the USO Family Gang, specifically as to his relationship with an adult corrections officer at Halawa Correctional Facility, Feso Malafau ("ACO Malafau").[6]  AUSA Brady stated that when Abihai expressed an intent to testify in the trial, the federal government took some precautions to keep him safe.  For example, Abihai was transferred to the Federal

---

[5]    The USO Family Gang was a prison gang made up of mostly, but not exclusively, Samoan inmates in state correctional facilities.  "USO stands for United Samoan Organization . . . but it's also the Samoan word for brother."

[6]    In other words, AUSA Brady contacted Abihai _after_ he escaped and was re-arrested in June 2014.

Detention Center because "[w]e wanted to interview him again for his safety.  We did not want that to occur at Halawa."

AUSA Brady testified, however, that on September 30, 2014, he was informed that Abihai had told the U.S. Marshals that he was unwilling to testify in the trial.  AUSA Brady stated that he then met Abihai for a short discussion.  On cross-examination, AUSA Brady described their conversation:

> [The State:] And what was his demeanor?
> [AUSA Brady:] His demeanor was –- his demeanor was that he refused to come into the courtroom.  He said he did not want anyone to see his face.  But as he was telling me that he was smiling.
> [The State:] He was smiling?
> [AUSA Brady:] Yes.
> [The State:] Did the defendant ever ask for federal protection in exchange for his participation cooperating with the Feds?
> [AUSA Brady:] No.
> [The State:] If a potential witness like this defendant refused to cooperate with the federal government initially prior to trial are there any negative ramifications to that?
> [AUSA Brady:] No, there's nothing we could do if somebody refused to testify.

Abihai also called Federal Bureau of Investigation ("FBI") Officer Lawrence Myers ("Officer Myers").  Officer Myers testified he took precautions to ensure people did not know Abihai was speaking with federal investigators:

> [Abihai's Counsel:] And did you take precautions to protect Mr. Abihai from people either knowing about those interviews or knowing that he would testify?
> [Officer Myers:] Yes, I did.
> [Abihai's Counsel:] Are you comfortable telling us the exact nature of those precautions?
> [Officer Myers:] No.
> [Abihai's Counsel:] Why not?
> [Officer Myers:] Not in this open court.  It would endanger the lives of those that I took precautions to ensure their safety currently and those in the future.

> [Abihai's Counsel:] So, for example, if you have a technique that hides the fact that someone might be a snitch or rat, you don't want to tell the whole world what that technique is, correct?
> [Officer Myers:] That is correct.
> [Abihai's Counsel:] That's fine, I won't ask you for more details.

Abihai also called Wendell Yoda ("Manager Yoda"), a supervisor at Laumaka, as a witness.  Manager Yoda stated that, before Abihai left Laumaka on June 9, 2014, Abihai never told him about any threats he had received at Laumaka.  Manager Yoda testified that, if Abihai wanted to contact him, he could do so by using the phone in the main administration building at Laumaka.  Manager Yoda could not remember whether Abihai had tried to call him in the days leading up to his escape, but he also explained that generally, if an inmate has a problem, it was the case manager's responsibility to address the problem in the first instance.

Abihai also testified.  Abihai stated that, at some point after an indictment was filed against the USO Family and ACO Malafau, Abihai was approached by a USO member who threatened him should he testify in the trial:

> [Abihai:] Someone came up to me said that you going get one -- Feso Malafau going be going court and that the Feds going be calling me for one witness because in 2010 I was investigated when I came back from my violation and they told me not to testify or say anything or else I going get rolled up.
> [Abihai's Counsel:] Now, at that point were you planning to testify or saying anything?
> [Abihai:] At that moment, no.
> [Abihai's Counsel:] Did you make any attempts to let USOs, Mr. Malafau, anybody know that you was going to keep quiet?
> [Abihai:] Yes, I did.

> [Abihai's Counsel:] What attempts did you make?
> [Abihai:] I told that member I not going say nothing. And he said that if I do they going find out and then I going get rolled up.

Abihai also testified that security at Laumaka was lax, that it was easy to smuggle in contraband, and that the cameras in the facility did not work.  Abihai testified that he told Manager Yoda that it was important that he talk to him, and made two attempts to see him, but Manager Yoda did not see him. Abihai also stated that he told Officer Myers that he wanted to be transferred to Kulani Minimum Security Facility, because it was safer than Laumaka.

Abihai then explained what happened on June 9, 2014. Abihai stated that he did not show up to work and instead went to Rudy Nao's apartment because he thought he would be safe there:

> [Abihai's Counsel:] And why did you go to Rudy [Nao]'s place?
> [Abihai:] Because he was in one security apartment and he was living on the ninth floor.
> [Abihai's Counsel:] Did you trust Mr. [Nao] not to harm you or turn you over to anybody who would harm you?
> [Abihai:] Yeah, I trusted him.
> [Abihai's Counsel:] How long were you living with Rudy [Nao] before you got caught?
> [Abihai:] I was living with him all the way until I got doubt [sic].
> [Abihai's Counsel:] How come you didn't just call the cops after you walked away and said, hey, I took off, but I going turn myself in, just put me somewhere safe?
> [Abihai:] I never trust nobody.
> [Abihai's Counsel:] Why not?
> [Abihai:] Because in the past when I was younger they used to get bust me up.
> [Abihai's Counsel:] You're talking about cops?
> [Abihai:] Yeah.
> [Abihai's Counsel:] And did -- you knew some ACOs who were involved like Malafau who were dirty right?
> [Abihai:] Yeah.

> [Abihai's Counsel:] Did you know them all?
> [Abihai:] Yeah, I knew them all.
>
> . . . .
>
> [Abihai's Counsel:] . . . [I]f you turn yourself in did you feel you had guarantees of your safety?
> [Abihai:] No.
> [Abihai's Counsel:] What was your plan, why when you went to Rudy?
> [Abihai:] I went to his place because I knew that I was going be -- be questioned by the Feds and IA again to testify against Feso Malafau.
> [Abihai's Counsel:] So let's say they question you and you say I'm not going to talk, does that take the rat target off your back? . . . Let's say you don't, I mean, let's say that what happened happened, they catch you in three weeks, okay. You're back in custody. The Feds come to see you or take you out. If people find out about that conversation, does it matter whether you said I'll be a rat or I'm not going talk, does it matter, or do you always have the rat target?
> [Abihai:] It matters.
> [Abihai's Counsel:] How are you going to tell people and prove to them I kept my mouth shut?
> [Abihai:] Like I said, if I went stay long enough to stay out and the case was over I wouldn't be able to testify against them.

Before closing arguments, the circuit court instructed the jury that Abihai had raised the affirmative defense of "choice of evils." It then stated that the defense consisted of five elements, which "the defendant must prove . . . by a preponderance of the evidence. This means that the defendant must prove that it is more likely than not, or more probable than not, that each element of 'choice of evils' occurred." The circuit court also instructed the jury that,

> [i]f you unanimously find that the defendant has not proven one or more of the elements of "choice of evils" by a preponderance of the evidence, then you must find the defendant guilty of Escape in the Second Degree. [F]or any element which you decide the defendant has not proven by a preponderance of the evidence, your vote must be unanimous on that element.

> If you are unable to reach a unanimous agreement as to whether "choice of evils" has been proved or not been proved, then a verdict may not be returned on Escape in the Second Degree.

In closing arguments, the State argued that Abihai had failed to provide evidence that he met the fifth element of the choice of evils defense:[7]

> When you look at element No. 5, did he promptly report to the proper authorities when he obtained a position of safety from the immediate threat?  He didn't call HPD.  He didn't call the sheriffs.  He didn't call [Papali'i].  He didn't call Laumaka at all as you heard from Officer Morn . . . . He didn't call [Manager Yoda].  You know, he didn't even call Mr. Mahelona.  If by a stretch you could deem him a proper authority.  He didn't call any of these authorities let alone promptly.

Abihai's counsel stated that it was "tough" for them to meet the fifth element of the choice of evils defense because "he never turned himself in.  They had to catch him."  On February 9, 2017, the jury returned a guilty verdict on Abihai's escape in the second degree charge.

The circuit court held a sentencing hearing on June 14, 2017.  DPS had submitted a certificate of detention regarding Abihai's presentence detention[8] indicating 1032 days of credit

---

[7]    See note 4, supra.

[8]    DPS's Corrections Administration Policy and Procedures Policy No. Cor.05.01 effective December 2, 2009 concerns "Certificate of Pre-Sentence Credits," and states its "Purpose" under section 1.0 as follows:

> To implement the statutory requirements set forth in [HRS §] 706-[671], in a consistent and timely manner.  The statute requires that all time spent in custody in relation to the charge on which a defendant is sentenced shall be credited toward that sentence as pre-sentence credit.  Furthermore, the party having custody of the defendant shall supply a certificate indicating all the pre-sentence credit, to the court prior to sentencing.

from Abihai's June 29, 2014 arrest until April 25, 2017.[9]

Abihai's counsel indicated Abihai would be appealing his conviction and would not be addressing the court, and requested that Abihai's prison term be made to run concurrently with the sentence he was already serving, with credit for time served. The State requested that Abihai be sentenced to a five-year term for the escape conviction, to be imposed consecutive to his existing life sentence.

The circuit court then ordered that Abihai's five-year sentence be served concurrent to his life sentence, and that he receive credit for time served. In response, the State argued that Abihai was not entitled to be given credit for time served before his conviction. The circuit court then ordered further briefing.

Right after the June 14, 2017 hearing, the circuit court entered a judgment of conviction and sentence, attaching the DPS certificates of detention along with a mittimus committing Abihai to the custody of DPS.

The State then filed a memorandum regarding presentence detention credit on June 19, 2017, and Abihai filed a responsive memorandum on June 25, 2017. The circuit court then conducted

---

[9]   DPS also submitted another certificate for one day of credit for April 8, 2015, but this date is apparently included in the first certificate.

a further sentencing hearing on June 28, 2017.  The circuit court agreed with the State, ruling that based on the plain language of HRS § 706-671(3) (2014), Abihai was not entitled to presentence detention credit.  The circuit court ordered that Abihai be given credit only from the June 14, 2017 sentencing date.

**C.    ICA Proceedings**

On July 12, 2017, Abihai filed a notice of appeal. Abihai's opening brief alleged two points of error:  (1) that trial counsel was ineffective for substantially impairing Abihai's choice of evils defense; and (2) that the circuit court misconstrued HRS § 706-671 when it denied Abihai credit for time served before sentencing.

The ICA entered a SDO on July 19, 2018 which affirmed the circuit court's judgment of conviction and sentence.  State v. Abihai, CAAP-17-0000546 (App. July 19, 2018) (SDO).  Regarding Abihai's ineffective assistance of counsel claim, the ICA first noted that under State v. Wakisaka, 102 Hawai'i 504, 513-14, 78 P.3d 317, 326-27 (2003),

> [t]he defendant has the burden of establishing ineffective assistance of counsel and must meet the following two part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense.

14

Abihai, SDO at 2.  The ICA concluded Abihai could not
demonstrate that any alleged errors or omissions of his trial
counsel resulted in the withdrawal or substantial impairment of
a potentially meritorious defense.  Abihai, SDO at 3-4.  The ICA
noted that in a choice of evils defense involving escape, five
elements must be proven.[10]  Abihai, SDO at 4.  The ICA stated
that because there was no evidence in the record regarding one
of the elements, that Abihai promptly reported to the proper
authorities when he had attained a position of safety from the
immediate threat after escaping Laumaka, Abihai could not prove
the requisite fifth element of the choice of evils defense.  Id.
Therefore, the ICA concluded that Abihai failed to establish
that his trial counsel was ineffective.  Id.

Regarding credit for time served, the ICA concluded that
under the plain language of HRS § 706-671(3), because Abihai had
been serving a life term of imprisonment for his unrelated
felony conviction prior to escaping Laumaka, "[a]fter being
taken back into custody on June 29, 2014, Abihai continued to
serve time on his life imprisonment sentence for his prior
felony convictions unrelated to his escape conviction."  Abihai,
SDO at 5.  Therefore, the ICA determined that the circuit court
did not err in denying credit for Abihai's time served from June

---

[10]   See note 4, supra.

29, 2014 (the date he was returned to custody) to June 14, 2017 (the date he was sentenced for the escape conviction) for his subsequent escape conviction.  Id.

The ICA entered its judgment on appeal on September 6, 2018.

### III.  Standards of Review

#### A.   Ineffective Assistance of Counsel

> The burden of establishing ineffective assistance of counsel rests upon the appellant.  His burden is twofold: First, the appellant must establish specific errors or omissions of defense counsel reflecting counsel's lack of skill, judgment or diligence.  Second, the appellant must establish that these errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense.

State v. Antone, 62 Haw. 346, 348-49, 615 P.2d 101, 104 (1980) (citations and footnote omitted).

In evaluating whether defense counsel's omission deprived a defendant of a potentially meritorious defense, this court considers "the possible, rather than the probable, effect" of the error.  Maddox v. State, 141 Hawai‘i 196, 205, 407 P.3d 152, 161 (2017) (quoting Wilton v. State, 116 Hawai‘i 106, 119, 170 P.3d 357, 370 (2007)).

#### B.   Statutory Interpretation

Statutory interpretation is a question of law reviewable de novo.  When construing statutes, the court is governed by the following rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself.

16

Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.  Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
　　　When there is ambiguity in a statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.  Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law.

See Citizens Against Reckless Dev. v. Zoning Bd. of Appeals, 114 Hawai'i 184, 193-94, 159 P.3d 143, 152-53 (2007) (internal citations omitted).

### IV.  Discussion

Abihai presents two questions on certiorari:  (1) whether the ICA erred in finding that his trial counsel was not ineffective; and (2) whether the ICA erred when it concluded that HRS § 706-671 did not require the circuit court to give him pretrial detention credit from his June 29, 2014 arrest to June 14, 2017.  The two questions are discussed in turn.

**A.    We affirm Abihai's conviction without prejudice to a subsequent Hawai'i Rules of Penal Procedure Rule 40 petition with respect to his ineffective assistance of counsel claim**

With respect to the first question on certiorari, Abihai argues that his trial counsel was ineffective.  He alleges trial counsel failed to do three specific things that led to a substantial impairment of Abihai's choice of evils defense:  (1)

question the federal officers about Abihai's request to be

transferred; (2) question Officer Myers about the safety

procedures and precautions he took to protect Abihai; and (3)

point out that it was Abihai's potential testimony against an

adult corrections officer, not against the USO family gang, that

posed a significant danger to Abihai.

The ICA rejected Abihai's ineffective assistance claim on

the grounds that there was no evidence regarding the fifth

element of the choice of evils defense, which required that he

"promptly report[] to the proper authorities when [he] ha[d]

attained a position of safety from the [alleged] immediate

threat."  HRS § 703-302(3) sets out the choice of evils defense

to a prosecution for escape under HRS § 710-1021, and provides;

> **Choice of evils.**
> . . . .
> (3) In a prosecution for escape under section 710-1020 or
> 710-1021, the defense available under this section is
> limited to an affirmative defense consisting of the
> following elements:
>    (a)   The actor receives a threat, express or
>            implied, of death, substantial bodily injury,
>            or forcible sexual attack;
>    (b)   Complaint to the proper prison authorities is
>            either impossible under the circumstances or
>            there exists a history of futile complaints;
>    (c)   Under the circumstances there is no time or
>            opportunity to resort to the courts;
>    (d)   No force or violence is used against prison
>            personnel or other innocent persons; <u>and</u>
>    (e)   <u>The actor promptly reports to the proper</u>
>            <u>authorities when the actor has attained a</u>
>            <u>position of safety from the immediate threat</u>.

HRS § 703-302(3) (emphasis added).  Pursuant to HRS § 701-115(2)

(2014), "[n]o defense may be considered by the trier of fact

unless evidence of the specified fact or facts has been presented . . . ."

The ICA erred in ruling that there was no evidence of the fifth element.  Abihai did not testify that when he arrived at the paroled inmate's apartment, he believed it to be safe.  Rather, when asked whether he felt he "had guarantees of . . . safety" after arriving at the apartment, he responded in the negative.  He also testified that he thought he needed to "stay [there] long enough . . . and the case [would be] over [and] I wouldn't be able to testify against them."  The circuit court would have had no basis for instructing the jury on the choice of evils defense if there had been no evidence of the fifth element.  Thus, the ICA erred in ruling on Abihai's ineffective assistance of counsel claim on the basis that there was no evidence of the fifth element.

With respect to a defendant's assertion of ineffective assistance of counsel on a direct appeal, we have held:

> [No]t every trial record is sufficiently developed to determine whether there has been ineffective assistance of counsel; indeed, a defendant is often only able to allege facts that, if proved, would entitle [them][11] to relief. Therefore, we hold that where the record on appeal is insufficient to demonstrate ineffective assistance of counsel, but where: (1) the defendant alleges facts that if proven would entitle [them] to relief, and (2) the claim is not patently frivolous and without trace of support in the record, the appellate court may affirm defendant's conviction without prejudice to a subsequent Rule 40 petition on the ineffective assistance of counsel claim.

---

[11]    "They, them, and their" are used as singular pronouns when (1) the gender identity of a person referred to is unknown or immaterial; or (2) those are the pronouns of a specific person.

State v. Silva, 75 Hawai'i 419, 439, 864 P.2d 583, 592-93 (1993) (footnote omitted).

In this case, the record on appeal is insufficient to determine whether there has been ineffective assistance of counsel.  We therefore affirm Abihai's conviction, but without prejudice to a subsequent Rule 40 petition on the ineffective assistance of counsel claim.

**B.  The circuit court erred in denying Abihai credit for time served on his subsequent escape conviction, not from June 14, 2017, but from March 17, 2015, when bail was set on the escape charge**

Abihai's second question on certiorari requires us to interpret HRS § 706-671 subsections (1) and (3) (2014), which provide as follows:

> **Credit for time of detention prior to sentence; credit for imprisonment under earlier sentence for same crime.**  (1)  When a defendant who is sentenced to imprisonment has previously been detained in any State or local correctional or other institution following the defendant's arrest for the crime for which sentence is imposed, such period of detention following the defendant's arrest shall be deducted from the minimum and maximum terms of such sentence.  The officer having custody of the defendant shall furnish a certificate to the court at the time of sentence, showing the length of such detention of the defendant prior to sentence in any State or local correctional or other institution, and the certificate shall be annexed to the official records of the defendant's commitment.
>
> . . . .
>
> (3)  Notwithstanding any other law to the contrary, when a defendant is convicted for a crime committed while serving a sentence of imprisonment on a separate unrelated felony conviction, credit for time being served for the term of imprisonment imposed on the defendant for the separate unrelated felony conviction shall not be deducted from the term of imprisonment imposed on the defendant for the subsequent conviction.

20

Abihai argues that credit for time served is mandatory under HRS § 706-671(1).  Abihai argues that, pursuant to subsection (1), he is entitled to presentence detention credit for 1082 days for the time period from June 29, 2014, when he was initially arrested for escape, until June 14, 2017, his sentencing date.[12]  The State asserts Abihai is not entitled to any presentence detention credit based on HRS § 706-671(3), which was added by the legislature in 2012.  The circuit court and ICA agreed with the State.

We apply the rules of statutory interpretation to the parties' competing arguments.  First, the fundamental starting point for statutory interpretation is the language of the statute itself.  Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.

1.  **Application of the plain language of HRS § 706-671(1) to Abihai's case**

We first address HRS § 706-671(1).  Based on its plain language, a person is entitled to presentence detention credit if (1) the person is a defendant (2) sentenced to imprisonment (3) who had previously been detained in a State institution (4) following the person's arrest (5) for the crime for which sentence was imposed.

---

[12]   We have not determined if this calculation is correct.

Abihai claims credit from his June 29, 2014 arrest until his June 14, 2017 sentencing based on HRS § 706-671(1). Abihai clearly meets factors (1), (2), (3), and (4). With respect to factor (5), however, the record reveals that Abihai was released on his own recognizance on the escape charge after his June 29, 2014 arrest until March 17, 2015, when he was charged for escape and rearrested on the escape charge, with bail set at $10,000. In other words, after his June 29, 2014 arrest, and until his March 17, 2015 rearrest on the escape charge with bail set at $10,000, Abihai was held in custody in Halawa only on his previous sentence for the other unrelated felony convictions. Thus, from June 29, 2014 until March 17, 2015, Abihai was not being detained "for the crime for which [the escape] sentence [was] imposed." Therefore, HRS § 706-671(1) does not entitle Abihai to presentence detention credit for the entire time he claims.

From March 17, 2015 until the June 14, 2017 sentencing date, however, Abihai was held to answer on the escape charge, with bail set at $10,000. See State v. Visintin, 143 Hawai'i 143, 146, 426 P.3d 367, 370 (2018). Thus, according to HRS § 706-671(1), Abihai is entitled to presentence detention credit.[13]

---

[13]  It is unclear how long Abihai was held, after his June 29, 2014 arrest until he was released on his own recognizance pending investigation, until he was charged with escape on March 17, 2015.

The issue we must address is, however, whether, as concluded by the circuit court and ICA, the plain and unambiguous language of HRS § 706-671(3) eliminated Abihai's entitlement to presentence detention credit under HRS § 706-671(3).

2.   **Application of the plain language of HRS § 706-671(3) to Abihai's case**

According to the plain language of the third subsection of HRS § 706-671, (1) notwithstanding any other law to the contrary, (2) when a defendant (3) is convicted for a crime committed (4) while serving a sentence of imprisonment on a separate unrelated felony conviction, (5) credit for time being served for the separate unrelated felony conviction (6) shall not be deducted from the term of imprisonment imposed on the defendant for the subsequent conviction.

In applying HRS § 706-671(3) to Abihai, it is necessary to first determine whether factors (2) through (6) would eliminate Abihai's entitlement to presentence detention credit under HRS § 706-671(1).  If so, then HRS § 706-671(1) would be an "other law to the contrary" to HRS § 706-671(3) under factor (1), nullifying Abihai's entitlement to credit for time served under HRS § 706-671(1).

The circuit court and ICA reached the conclusion that Abihai is not entitled to presentence detention credit based on

the plain language of HRS § 706-671(3).  We disagree.  The plain language of HRS § 706-671(3) does not eliminate Abihai's entitlement to presentence detention credit pursuant to HRS § 706-671(1).

Although factors (2) through (4) of HRS § 706-671(3) are met because (2) Abihai (3) was convicted for a crime committed (4) while serving a sentence of imprisonment on a separate unrelated felony conviction, the critical factor is factor (5), and whether the presentence detention credit time Abihai requests is "time being served for the separate unrelated felony conviction."  The answer is no.  The time Abihai was serving from March 17, 2015 to June 14, 2017 was not just "time being served for the separate unrelated felony conviction" but was also "time being served for the escape."  Thus, Abihai was not requesting that factor (5) "time being served for the separate unrelated felony conviction" "be deducted from the term of imprisonment imposed on [him] for the subsequent [escape] conviction."

Therefore, neither factors (5) nor (6) were triggered. Accordingly, in this specific situation, HRS § 706-671(1) is not an "other law to the contrary" to HRS § 706-671(3) under factor (1).[14]

---

[14]    If bail had not been set and Abihai had been released on his own recognizance pending trial and sentencing, then HRS § 706-671(3) would have been triggered, because Abihai would not have been entitled to presentence

As noted, the fundamental starting point for statutory interpretation is the language of the statute itself and, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.  Based on its plain and unambiguous language, HRS § 706-671(3) was not triggered in this situation.  Further, due to the plain and unambiguous language of HRS § 706-671 subsections (1) and (3), it is not necessary or appropriate to resort to principles of statutory interpretation applicable to ambiguous statutes.

The dissent misstates our analysis by asserting that our "interpretation that [HRS] § 706-671(1) entitles Abihai to pre-sentence detention credit creates a new rule [and] disregards our precedent . . . ."  It is actually the dissent that would overrule precedent by ignoring this jurisdiction's consistent holdings that a defendant is entitled to credit for time served in connection with the offense for which he is being sentenced. The dissent cites to State v. Miller, 79 Hawai'i 194, 197, 900 P.2d 770, 773 (1995), State v. Kami, 71 Haw. 612, 801 P.2d 1206 (1990), and State v. Yamasaki, 91 Hawai'i 163, 164, 981 P.2d 720, 721 (App. 1999), as supportive of its position.  None of these cases, however, eliminated the fundamental requirement under

_____

detention credit for the escape conviction pursuant to HRS § 706-671(1).  We also note that the circuit court sentenced Abihai to serve his five-year term for escape concurrently with his life sentence for his previous felonies.

25

HRS § 706-671(1) that a defendant be given presentence detention credit when "detained in any State or local correctional or other institution following the defendant's arrest for the crime for which sentence is imposed[.]" The defendants in these cases cited by dissent were not entitled to presentence detention credit because they were not so detained.[15]

Moreover, State v. Tauiliili, 96 Hawai'i 195, 29 P.3d 914 (2001), also cited to by the dissent, with State v. Garcia, 125 Hawai'i 429, 263 P.3d 709 (2010), in accord, actually supports Abihai's position. Tauiliili held that a defendant is entitled to presentence detention credit on each of the cases for which a defendant is sentenced to concurrent sentences. 96 Hawai'i at 199, 29 P.3d at 918. As noted, the circuit court sentenced Abihai to serve his five-year sentence for the escape conviction

---

[15] In Miller, this court held the defendant was not entitled to credit for time served on a new charge because his "probation [on the previous burglary conviction] had not been revoked when he was incarcerated on the separate charge of second degree robbery that ultimately led to his conviction[,]" and that "[t]hus, with respect to [his] newly imposed sentence for his earlier burglary conviction, the circuit court properly denied him credit for time served after his arrest for the subsequent offense." 79 Hawai'i at 197, 900 P.2d at 773. Likewise, Kami held that "because probation was not revoked nor a new sentence imposed . . . , no new sentence existed for which Defendant could receive credit for the time he had served . . . ." 71 Haw. at 615, 801 P.2d at 1208. In Yamasaki, the ICA "conclude[d] that [HRS] § 706-671(1) . . . does not afford a defendant the right to credit against the sentence imposed . . . for a criminal conviction the time that the defendant spent in prison, post-arrest and pre-sentence, as a consequence of a different criminal charge and/or conviction." 91 Hawai'i at 164, 981 P.2d at 721. Thus, these cases are clearly distinguishable on their facts, and do not affect Abihai's entitlement to presentence detention credit pursuant to HRS § 706-671 from March 17, 2015, when he was arrested and held on the escape charge.

concurrently with his life sentence for his previous convictions.

The Model Penal Code and Commentaries § 7.09 at 306-07 (Official Draft and Revised Comments 1985)("MPC"), cited to by the dissent, which the ICA noted was the model for HRS § 706-671 in Yamasaki, 91 Hawai'i at 165, 981 P.2d at 722, also supports Abihai's position.  As the dissent notes, the Explanatory Note to MPC § 7.09(1) states, "[s]ubsection (1) establishes the defendant's right to credit against his ultimate sentence for time served prior to the imposition of the sentence as a result of the same criminal charge."

Abihai was charged with and arrested for the escape charge on March 17, 2015 with bail set at $10,000 on the same date, which remained unposted.  We have made it clear that Abihai is not entitled to credit for time served from June 29, 2014, when he was taken into custody on the original sentence on the unrelated charges until his March 17, 2015 charge, arrest, and setting of bail on the escape charge.  Abihai remained in custody on the escape charge, however, from March 17, 2015 until he was sentenced on the same escape charge on June 14, 2017.  Pursuant to the plain language of HRS § 706-671, our case law, and the MPC's Explanatory Note, Abihai is entitled to credit to time served from March 17, 2015 until June 14, 2017, as presentence time served in connection with the offense for which

the defendant is being sentenced and as "credit against his ultimate sentence for time served prior to the imposition of the sentence as a result of the same criminal charge."

Finally, although we conclude there is no ambiguity in the statutory language, even if an ambiguity existed, the rule of lenity would require this court to construe HRS § 706-671 strictly, and in favor of the defendant.  See State v. Bayly, 118 Hawai'i 1, 15, 185 P.3d 186, 200 (2008) ("[W]here a criminal statute is ambiguous, it is to be interpreted according to the rule of lenity.  Under the rule of lenity, the statute must be strictly construed against the government and in favor of the accused.") (citation omitted).[16]

### V.  Conclusion

Based on the foregoing, the circuit court's June 14, 2017 judgment of conviction and sentence is affirmed, but the ICA's September 6, 2018 judgment on appeal is vacated, and this matter is remanded to the circuit court for calculation of Abihai's presentence detention credit consistent with this opinion.[17]

| | |
|---|---|
| Harrison L. Kiehm<br>for petitioner | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| David L. Williams<br>for respondent | /s/ Michael D. Wilson |



---

[16]   We also note that, in this case, denial of presentence detention credit would in effect have punished Abihai for exercising his constitutional right to a jury trial of his peers, as his first trial ended in a mistrial on November 28, 2016, extending the time of his pretrial detention.

[17]   See notes 12 and 13, supra.