*** FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER ***

Electronically Filed
Supreme Court
SCAP-23-0000453
30-SEP-2025
03:29 PM
Dkt. 13 OP

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

CASEY CAMERON EASON,
Petitioner-Appellee,

vs.

STATE OF HAWAIʻI,
Respondent-Appellant.

SCAP-23-0000453

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CAAP-23-0000453; CASE NOS. 3CPN-21-0000012 and 3PC03100097K)

SEPTEMBER 30, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, GINOZA, AND DEVENS, JJ.

OPINION OF THE COURT BY GINOZA, J.

In 2003, Petitioner-Appellee Casey Cameron Eason

(**Eason**) was charged with murder in the second degree in

violation of Hawaiʻi Revised Statutes (**HRS**) § 707-701.5 (1993)[1]

---

[1] At the time of the offense, HRS § 707-701.5, governing murder in the second degree, provided, in pertinent part:

and with a sentencing enhancement under HRS § 706-657 (Supp. 1997).[2]  If convicted as charged, Eason was subject to life imprisonment without the possibility of parole.

At a March 31, 2004 hearing, in the Circuit Court of the Third Circuit (**Circuit Court**),[3] Eason changed his plea from not guilty to no contest.  On June 17, 2004, the Circuit Court entered judgment for murder in the second degree, without the sentencing enhancement.  Under his no contest plea, Eason was sentenced to life imprisonment with the possibility of parole.

Between 2008 and 2010, Eason, pro se, filed four post-conviction petitions for relief, which were subject to Hawai'i Rules of Penal Procedure (**HRPP**) Rule 40 (eff. 2006).  None of

---

(1)  Except as provided in section 707-701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.

[2]    At the time of the offense, HRS § 706-657, governing enhanced sentences for second degree murder provided, in pertinent part:

The court may sentence a person who has been convicted of murder in the second degree to <u>life imprisonment without possibility of parole</u> under section 706-656 if the court finds that the murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity. . . . As used in this section, the phrase "especially heinous, atrocious, or cruel, manifesting exceptional depravity" means a conscienceless or pitiless crime which is unnecessarily torturous to a victim[.]

(Emphasis added.)

[3]    The Honorable Ronald Ibarra presided.

2

these petitions challenged the validity of his change of plea. Eason's first four petitions were either denied or dismissed.

In 2019, the judiciary's administration authorized disposing of certain records in the Third Circuit, resulting in the disposal of the digital recordings and stenographer notes from Eason's March 31, 2004 change of plea hearing.

In 2021, seventeen years after his conviction, Eason hired counsel to obtain transcripts of the March 31, 2004 change of plea hearing.  Upon learning that no transcript could be prepared, Eason filed a fifth petition (**Fifth Petition**) pursuant to HRPP Rule 40, asserting for the first time that his change of plea was not made voluntarily, knowingly, and intelligently.

After an evidentiary hearing, the Circuit Court (**Rule 40 Court**)[4] granted Eason's Fifth Petition, concluding he was entitled to relief on his claim.  The Rule 40 Court ordered that Eason's conviction be vacated in the criminal case and that he be returned to "no bail" status until further order of the court.  Eason remains in custody.

Respondent-Appellant State of Hawaiʻi (**State**) appealed the Rule 40 Court's decision to the Intermediate Court of

---

[4]     The Honorable Wendy M. DeWeese presided as the Rule 40 Court.  To distinguish between the underlying criminal case (3PC03100097K) and the case addressing Eason's Fifth Petition (3CPN-21-0000012), "Circuit Court" refers to the criminal case court, and "Rule 40 Court" refers to the court in the Rule 40 proceedings.

Appeals (**ICA**), asserting the Rule 40 Court erred by: (1) failing to dismiss Eason's Fifth Petition because Rule 40 improperly expands substantive rights in violation of HRS § 602-11 (2016), and thus the Rule 40 Court lacked jurisdiction; (2) concluding that Eason's due process rights were violated because there is no fitness determination in the criminal case record; (3) ruling Eason did not waive his claims under Rule 40's waiver provision; (4) concluding there was a minimal record and thus shifting the burden to the State to prove that Eason entered his plea knowingly, voluntarily, and intelligently; and (5) determining the State failed to prove Eason's plea was voluntarily made.  We granted transfer to this court.

We hold that Rule 40 is valid under this court's constitutional rulemaking authority and thus reject the State's argument that the Rule 40 Court lacked jurisdiction.  We also conclude that although Eason appears to have waived his claim that his plea was not made voluntarily, knowingly, and intelligently, here, the interests of justice and unusual circumstances warrant reaching the merits of Eason's Fifth Petition.  On the sufficient available record, we conclude Eason's plea was constitutionally valid.

Accordingly, we vacate the Rule 40 Court's Final Judgment, entered on July 26, 2023.  We reinstate the Judgment

of Conviction and Sentence against Eason entered on June 17, 2004.

## I.    BACKGROUND

## A.    Factual Background

On April 10, 2003, a local family found the decomposing body of 39-year-old Michael Rhett Hackmeyer (**Hackmeyer**) off a beach trail in an isolated area near Makalawena Beach on the Big Island of Hawai'i.  Officers later recovered a torque wrench approximately twelve to thirteen inches long near the body with hair, blood, and "some other matter" on it.  It was determined Hackmeyer died on April 1, 2003, from massive head trauma due to multiple skull fractures.

After being arrested, Eason reported to police that he and Hackmeyer had been driving to a surf spot in Eason's truck.[5]  According to Eason, he owed Hackmeyer money.  Eason stated Hackmeyer was high on cocaine, and threatened his family and girlfriend and became violent.  Eason stopped the truck and they began fist fighting.

At some point, Hackmeyer called 9-1-1, and dispatch heard the following: "I'm being chased[.]"  "Trying to kill me."  "Stop, Casey[!]"  "Get away from me[.]"  "No[!]"  "No[!]"  "Help[!]"  The person on the tape was breathing hard, and

---

[5]    Hackmeyer's sister told police that Eason was one of Hackmeyer's only friends in Hawai'i.

sounded as though he had been running while trying to speak. The dispatcher testified that the caller was unable to give a location, but indicated he believed his death was imminent. The call abruptly ended with the continuous sound of a cell phone tone, as though a number on the key pad was being held down.

Eason also told police that while he and Hackmeyer were fighting, Eason grabbed his torque wrench from his vehicle and struck Hackmeyer with it approximately six times on the top of his head. He reported that while Hackmeyer was still alive, Eason grabbed him by the leg and dragged him off the road into the bushes. As Hackmeyer looked up at Eason, Eason said "[h]ow dare you threaten my family," and left him.

Later in the criminal case, Eason changed his account about Hackmeyer's death several times.

B.   **Procedural Background**

On April 14, 2003, Hawai'i County Police arrested Eason.

On April 16, 2003, the State filed a complaint charging Eason with murder in the second degree under HRS § 707-701.5, with a sentencing enhancement under HRS § 706-657, alleging the crime was "especially heinous, atrocious, and/or cruel." Eason requested a preliminary hearing, which was held the next day in the District Court of the Third Circuit North

and South Kona Division (**District Court**).[6]  An officer testified that he interviewed Eason, who initially gave a statement about being attacked by three men, before confessing.[7]

The District Court found probable cause existed and committed the case to the Circuit Court.

### 1.    Circuit Court Proceedings (Criminal Case)

On April 30, 2003, Eason entered a plea of not guilty. The Circuit Court granted the State's motion for no bail given the especially heinous, atrocious, and cruel manner of Hackmeyer's death.  The court appointed John Olson (**Olson**) as counsel.

On July 14, 2003, the State made a plea offer that Eason plead guilty or no contest to murder in the second degree, without the sentencing enhancement, and therefore punishable by a maximum of life with the possibility of parole.

On July 25, 2003, Eason filed a Motion for Mental Examination and Appointment of Examiners pursuant to HRS §§ 704-400 (2014), 704-401 (1993) and 704-403 (2014) (**704 Motion**).  The

---

[6]    The Honorable Joseph P. Florendo, Jr. presided.

[7]    During Circuit Court proceedings, Eason would again change his story to claim a third party committed the murder, first naming one individual, then claiming he lied about that person, and ultimately refusing to name the other alleged third party.  In his Fifth Petition, Eason stated Hackmeyer died "from severe head injuries sustained during a fight with [Eason]."

Circuit Court granted the 704 Motion and suspended proceedings pending examiners' reports.

All three court-appointed examiners concluded Eason was fit to proceed.[8]

On February 13, 2004, Olson filed the first of three motions to withdraw as Eason's attorney, asserting Eason would not cooperate with Olson in providing information about the alleged offense. At a hearing on February 19, 2004, the Circuit Court addressed Olson's motion and engaged extensively with Eason regarding Eason's ability to cooperate with Olson and his willingness to answer Olson's questions regarding the case. The court denied Olson's motion based on the court's findings that the attorney-client relationship remained intact. After Olson filed a second motion to withdraw, the Circuit Court held a

---

[8]     Prior to the court-appointed examinations, Olson retained a private psychologist, who found Eason fit to proceed. Olson also hired an additional private psychologist to examine Eason. Olson stated in a declaration that this psychologist "reported that [Eason] had no brain damage due to drug usage and that [Eason] was deceptive in his interview[.]"

The Circuit Court appointed three examiners and specifically asked them to opine in their reports on whether Eason "acted intentionally or knowingly in committing heinous, atrocious or cruel acts manifesting exceptional depravity" and "intentionally or knowingly inflicted, and the victim must have suffered, unnecessary torture, which is the infliction of extreme physical or mental suffering beyond that necessarily accompanying the alleged underlying killing."

Two examiners explicitly did not opine on whether Eason committed acts manifesting exceptional depravity, and the third did not discuss it. Because none of the examiners proffered an opinion as to the Circuit Court's question, Olson filed a motion for appointment of a third examiner, but the replacement State Designate also would not opine on this question and recused. Olson filed a second motion for appointment. Up until the March 31, 2004 hearing, the parties were unable to find a third examiner.

hearing on March 11, 2004 and engaged in another extensive colloquy with Eason before denying Olson's second motion.

On March 31, 2004, based on the clerk's minutes from that day,[9] the Circuit Court held a hearing on Olson's third

---

[9]   The following are the minutes from the March 31, 2004 hearing:

THIRD MOTION TO WITHDRAW AS [DEFENDANT'S] ATTORNEY: OLSON REQUESTED THIS MOTION BE ADDRESSED BEFORE PROCEEDING TODAY. ARGUMENT BY OLSON.

10:25 - 11:20 CLOSED HEARING TRANSCRIPT OF THIS PORTION OF THE PROCEEDING SHALL BE SEALED.

**[DEFENDANT] HAVING MADE CHOICE TO PURSUE AND WANTS OLSON TO PURSUE REPRESENTATION IN HIS CASE. OLSON'S RESPONSE IS IF COURT DENIES MOTION, HE WILL BE ABLE TO CONTINUE REPRESENTATION OF THE [DEFENDANT]; THEREFORE, MOTION DENIED.

COURT ALLOWED [DEFENDANT] TO CONTACT HIS [MOTHER], BARBARA EASON, WITH USE OF OLSON'S CELL PHONE. OLSON INSTRUCTED THAT [DEFENDANT] ONLY BE ALLOWED TO TALK TO HIS MOTHER AND NO ONE ELSE.

11:20 - 11:29 RECESS

OLSON STATED [DEFENDANT] IS WAIVING THIRD PANEL MEMBER'S DECISION. COURT, UPON QUESTIONING [DEFENDANT], FINDS HE UNDERSTANDS HIS RIGHT TO HAVE THIRD MEMBER OF PANEL APPOINTED; FURTHER FINDS [DEFENDANT] KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY WAIVED THAT RIGHT.

[DEFENDANT] ENTERED NO CONTEST PLEA TO MURDER 2ND (NOT HEINOUS, ATROCIOUS AND/OR CRUEL). COURT FINDS FACTUAL BASIS TO SUPPORT THE NO CONTEST PLEA. COURT, UPON QUESTIONING [DEFENDANT] AND COUNSEL, FINDS THAT [DEFENDANT] VOLUNTARILY ENTERED PLEA OF NO CONTEST WITH AN UNDERSTANDING OF THE NATURE OF THE CHARGES AGAINST HIM AND THE CONSEQUENCES OF HIS PLEA.

COURT ACCEPTED PLEA AND FOUND [DEFENDANT] GUILTY OF MURDER 2ND, IN VIOLATION OF SECTION 707-701.5, NOT HEINOUS, ATROCIOUS AND/OR CRUEL.

SENTENCING SET FOR 5-10-2004 AT 10:30 AM.

APD TO CONTACT [DEFENDANT] AT HCCC SO THAT A PSI CAN BE PREPARED. WRITTEN INPUT TO APD DUE 4-23-2004.

motion to withdraw.  After a hearing lasting almost an hour, the Circuit Court denied Olson's motion to withdraw.  On this same date, during further proceedings lasting thirty-nine minutes, the Circuit Court found that Eason understood his right to have a third expert examiner appointed and knowingly, voluntarily, and intelligently waived that right.  Further, and significant to this appeal, Eason changed his plea from not guilty to no contest on the murder in the second degree charge, without the sentencing enhancement.  The Circuit Court found a factual basis supporting the no contest plea, and that Eason entered the plea voluntarily with an understanding of the nature of the charges and the consequences of his plea.  Further, Eason signed a written change of plea form, acknowledging it was reviewed with him.

No verbatim transcript or recording of the March 31, 2004 hearing exists today.  In 2019, the Hawai'i State Judiciary Information Technology Systems Department Records Management Office, authorized disposal of the court reporter notes and cassette tapes from the March 31, 2004 hearing, as well as certain "CAT DISKS, Video/Audio Recordings (Tapes and CD/DVD)," and noting an applicable retention period of ten years.

---

WRITTEN PLEA FILED IN OPEN COURT AT 12:08 PM.
(Emphasis added.) (Formatting altered.)

The remaining official court records related to the March 31, 2004 proceedings are the clerk's minutes and the change of plea form, signed by Eason.  However, also in the record is a declaration by Olson, filed under seal on April 21, 2004, that provides the context for the off-the-record discussion between himself, Eason, and Retired Judge Ronald Ibarra (**Ret. Judge Ibarra**).  Also, in the Rule 40 Court, Ret. Judge Ibarra provided a Certificate of Ret. Judge Who Presided Over Case (**Certificate**), that was entered into evidence and provided his routine practice for change of plea forms, which included reviewing a form from top to bottom with defendants. There are also transcripts from the District Court preliminary hearing and Circuit Court hearings prior to March 31, 2004.

Eason's sentencing hearing took place on June 16, 2004.  Olson stated he reviewed the presentence report with Eason and acknowledged that there was "only one sentence the Court can give, and that is life with the possibility of parole."

On June 17, 2004, the Circuit Court entered its Judgment of Conviction and Sentence, sentencing Eason to incarceration for life, with the possibility of parole.

On November 23, 2004, the Hawaii Paroling Authority (**HPA**) sentenced Eason to a Level III punishment based on the

11

nature of his offense, with a minimum term of thirty-three years imprisonment.

### 2. Eason's Post-Conviction Petitions for Relief

Prior to Eason's Fifth Petition filed in 2021 (the subject of this appeal), he filed four prior post-conviction petitions: (1) a Rule 40 petition in 2008 (**First Petition**);[10] (2) a writ of habeas corpus in 2009 (**Second Petition**);[11] (3) a writ identical to his Second Petition, filed in the Circuit Court of the First Circuit (**Third Petition**), also in 2009;[12] and (4) a Rule 40 petition, filed in the Circuit Court of the First Circuit, in 2010 (**Fourth Petition**).[13]

On April 7, 2008, Eason filed his First Petition, challenging his minimum sentence and contending HPA did not follow the Guidelines for Establishing Minimum Terms of Imprisonment. The Circuit Court denied the First Petition as "patently frivolous and without a trace of support in the record or evidence submitted by petitioner." Eason filed an untimely

---

[10] The Honorable Elizabeth A. Strance presided (case number 3PR08100002K).

[11] The Honorable Elizabeth A. Strance presided (case number 3PR09100003K).

[12] The Honorable Karl K. Sakamoto presided (case number 1CC091002695).

[13] The Honorable Richard K. Perkins presided (case number 1PR101000098).

notice of appeal and the ICA dismissed his appeal.  See Eason v. Haw. Paroling Auth., No. 29511, 2009 WL 924541 (Haw. App. Apr. 2, 2009) (order).

On October 12, 2009, Eason filed his Second Petition in the First Circuit, which was reassigned to the Third Circuit. Eason asserted as his grounds for relief that: (1) he was being held illegally and did not surrender his American citizenship to Hawai'i; and (2) this illegal restraint resulted in ongoing prejudice by denying him the freedom and enjoyment of life.

The Circuit Court treated Eason's Second Petition as a non-conforming petition and directed Eason to transmit the filing fee or request to proceed in forma pauperis.  When Eason did neither, the Court dismissed Eason's petition without addressing its merits.  Eason did not appeal.

On November 18, 2009, Eason filed his Third Petition in the First Circuit Court identical to his Second Petition, which the First Circuit Court denied for lack of jurisdiction. Eason appealed, and then filed a motion to dismiss his own case, which the ICA granted.  See Eason v. State, No. 30289, 2010 WL 5036996 (Haw. App. Dec. 8, 2010) (order).

On December 16, 2010, Eason filed his Fourth Petition in the First Circuit Court, asserting ten grounds for relief similar to those in his First Petition.  The First Circuit Court

13

dismissed Eason's petition for lack of jurisdiction.  Eason did not appeal.

In 2011, after filing his first four petitions, Eason began seeking hearing transcripts.  On May 5, 2011, Eason filed a "Motion for Docket Sheets, Minutes of Hearings and Transcripts to be Provided Free of Charge" (**Motion for Transcripts**) in the docket for the Second Petition, which the Circuit Court denied.[14]

In 2013, Barbara Eason (**Barbara**), Eason's mother, filed a request for transcripts with the Circuit Court.  The court reporter informed Barbara that she could transcribe recordings from all hearings except March 31, 2004, as that hearing had been sealed.

In 2015, Eason and his mother hired attorney Cynthia Kagiwada (**Kagiwada**) to get records from the prosecutor's office. In a letter to Eason dated March 21, 2016, Kagiwada stated that obtaining the transcript of the "plead out" was beyond the scope of what she and Eason agreed upon and required more fees.  Eason

---

[14]    Additionally, in the underlying criminal case, on April 28, 2011, the Circuit Court filed an "Order Denying Motion for Docket Sheets, Minutes of Hearings and Transcripts to be Provided Free of Charge, Received February 28, 2011."  Inexplicably, there is no "Motion for Docket Sheets, Minutes of Hearings and Transcripts to be Provided Free of Charge" in the criminal case docket.  On May 27, 2011, Eason filed a "Motion for Leave to File Interlocutory Appeal of Order Denying Motion for Docket Sheets, Minutes of Hearings and Transcripts to Be Provided Free of Charge" from the Circuit Court's April 28, 2011 order.  No order appears in the record addressing this motion.

did not have her pursue the change of plea hearing transcripts and instead fired her.

In 2021, Barbara hired attorney Terri Fujioka-Lilley (**Fujioka-Lilley**).  On July 26, 2021, Fujioka-Lilley filed a request for transcripts of the March 31, 2004 hearing from the Circuit Court.  On August 2, 2021, the Circuit Court sent her a letter that the transcript could not be prepared because "[t]he archive for the recording is currently unrecoverable and unavailable."

On October 13, 2021, two months after the letter from the Circuit Court informed Fujioka-Lilley that a transcript could not be prepared, Eason filed the Fifth Petition in the Rule 40 Court, alleging two grounds as a basis for relief:

> 1. Does a "change of plea" hearing require a complete and clear, on-the-record colloquy?
>
> 2. Does a plea of no contest require the record to show the plea was made voluntarily and knowingly?

Eason was appointed counsel and the Rule 40 Court scheduled an evidentiary hearing.

As to his contention that a change of plea hearing requires an on-the-record colloquy (**First Issue**), Eason alleges his colloquy was "very brief" and he has "NO memory" of the court telling him that by pleading no contest, he would lose the right to call witnesses on his behalf, the right to be part of jury selection, or the right to a bench trial.  He asserts that

because a transcript could not be prepared for his change of plea hearing, no record exists. He argues that the silent record shifted the burden of proof to the State to prove his plea was voluntarily and knowingly made and here, where no such proof is available, the Judgment of Conviction should be vacated.

Eason also alleges his plea was not voluntarily and knowingly made (**Second Issue**). He contends his no contest plea was not voluntary because his mother and Olson coerced him into taking it. He asserts his plea was not made knowingly because the colloquy with Ret. Judge Ibarra was incomplete and "very brief," and again asserts that he was not told that by entering the plea, he would not be able to call witnesses, nor was he told about the rights he would lose.

On January 21, 2022, Eason's counsel filed a supplement to his Fifth Petition (**Supplement**). In his Supplement, Eason additionally asserts that his plea was not made intelligently because he did not understand the nature of the charge against him or understand what sentence he would receive as a consequence of his plea.

Eason requested that the Rule 40 Court allow him to withdraw his no contest plea; set aside the conviction and vacate the judgment; vacate all pleadings entered while

16

proceedings were suspended under HRS § 704; and place the case back on the calendar.

The State opposed, contending Eason should have raised the claim that his plea was not voluntary in his First Petition in 2009, when the recording of the change of plea hearing was still available, and his failure to do so constitutes waiver under HRPP Rule 40(a)(3) (Rule 40's waiver provision).

### 3.    Rule 40 Court Proceedings

The Rule 40 Court conducted an evidentiary hearing over six days, with Eason, his mother, Olson, the deputy prosecuting attorney (**DPA**) from the criminal case, an investigator for the Office of the Prosecuting Attorney, County of Hawaiʻi, and Fujioka-Lilley testifying.[15]

On May 3, 2023, the Rule 40 Court entered its Findings of Fact, Conclusions of Law, and Order (**Rule 40 Order**) granting Eason's Fifth Petition; vacating the Judgment of Conviction and Eason's no contest plea; and reinstating the bail order in the criminal case.[16]

---

[15]    Ret. Judge Ibarra did not testify, but his Certificate was entered into evidence by stipulation of the parties.

[16]    The Rule 40 Court took judicial notice of the following records and documents:

> 1) All available court records in case numbers: 3PC03100097K [criminal case], 3PR081000002 [First Petition], 3PR091000003 [Second Petition], 1CC091002695

Given the lengthy history of this case and Eason's multiple attempts at post-conviction relief, the Rule 40 Court's findings of facts and conclusions of law were extensive. The Rule 40 Court concluded that it had subject matter over the Fifth Petition and that Eason brought the Fifth Petition pursuant to HRPP Rule 40(a)(1)(i) on the grounds "that the judgment was obtained or sentence imposed in violation of the constitution of the United States or of the State of Hawai'i[.]"

Broadly, the Rule 40 Court concluded that Eason was entitled to relief on his claims that his change of plea was not voluntarily made and his rights were violated when the Circuit Court accepted his plea without making a determination as to his mental fitness to proceed.

On the issue of whether Eason's plea was made voluntarily, knowingly, and intelligently, the Rule 40 Court concluded the record from the change of plea hearing is minimal and that the contents of the colloquy could only be proved by extrinsic evidence. The Rule 40 Court, relying on State v.

---

[Third Petition], 1PR101000098 [Fourth Petition], Appeal No. 29511, and Appeal No. 30289;

. . . .

3) The Retention Schedule for the Circuit Courts, adopted April 11, 2013; and

4) The Records Management Office: Records Disposition Authorizations, dated 04/25/2019 and 05/20/2019.

Merino, 81 Hawai'i 198, 221, 915 P.2d 672, 695 (1996) (footnote omitted), shifted the burden to the State to prove Eason's plea was knowingly, voluntarily, and intelligently made.  The Rule 40 Court concluded:

> 10.  The State has failed to show evidence sufficient to overcome the presumption in favor of the Petitioner and to prove that Petitioner's plea was voluntarily made after an on-the-record colloquy.  The evidence of what actually occurred on March 31, 2004 is scant, and there is no reliable evidence as to the specific contents of the court's colloquy with the Petitioner.  The recollections of those who were present in court that day have diminished with time and are now either non-existent or unreliable.  The clerk's minutes are devoid of any specifics about the nature of the court's questioning.  The Court also cannot rely upon the information in the plea form to ascertain if a proper colloquy took place, due to the numerous inconsistencies and omissions that render the credibility of this document dubious at best.

Additionally, the Rule 40 Court concluded the circumstances of the change of plea hearing were "abnormally stressful and emotionally charged," involving a "heated" closed session and a fraught phone call between Eason and his mother. The Rule 40 Court concluded:

> 13.  The impression that this Court is left with is that of an intense, rushed, and frazzled atmosphere surrounding the Petitioner's change of plea.  This fact, coupled with the fact that Petitioner had only a ninth-grade education, that he was suffering from some form of mental illness, and that Petitioner's relationship with his attorney was seriously strained, gives rise to concerns in the Court's mind about the propriety of the trial court's decision to move forward with the Defendant's plea to a murder charge at the March 31, 2004 hearing.
>
> 14.  This Court concludes that, due to the lack of evidence as to the substance of the court's colloquy, the State has failed to meet its burden to show that the Petitioner's plea was voluntarily made.  Additionally, the Court notes that the affirmative evidence in the record evinces conditions that reasonably could have constituted

19

undue pressure on the Petitioner under the totality of the circumstances.

With respect to waiver, the Rule 40 Court did not address the issue until the end of its extensive order. The court noted that customarily, waiver under Rule 40(a)(3) is the threshold issue before addressing the merits of a petitioner's claims. Here, however, the Rule 40 Court found that Eason's competency was crucial to its waiver analysis. The court stated that the most persuasive evidence on waiver was that no determination of Eason's competency was made before he pled no contest.

The Rule 40 Court concluded "the combination of the unusual circumstances surrounding the Petitioner's change of plea, the destruction of the records necessary to prepare a transcript of the hearing, and the failure of the court to address the matter of Petitioner's competence" constituted extraordinary circumstances, sufficient to override the waiver provision in Rule 40(a)(3).

The State challenges all of the aforementioned conclusions of law.

On May 22, 2023 the State filed a motion to vacate the Rule 40 Order, and to dismiss for lack of jurisdiction, which the Rule 40 Court summarily denied.

On July 26, 2023, the Rule 40 Court entered its Final Judgment in favor of Eason pursuant to the Rule 40 Order.

20

### 4. Appellate Proceedings

On July 31, 2023, the State appealed to the ICA from the Rule 40 Court's Final Judgment and challenged the Rule 40 Order. We granted transfer to this court.

## II. STANDARDS OF REVIEW

### A. Statutory Interpretation

> Statutory interpretation is a question of law reviewable de novo. In reviewing questions of statutory interpretation, we are guided by the following principles:
>
> > First, the fundamental starting point for statutory-interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

State v. Milne, 149 Hawai'i 329, 333, 489 P.3d 433, 437 (2021) (quoting State v. Castillon, 144 Hawai'i 406, 411, 443 P.3d 98, 103 (2019)).

> When there is ambiguity in a statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law.

State v. Abihai, 146 Hawai'i 398, 406, 463 P.3d 1055, 1063 (2020) (citing Citizens Against Reckless Dev. v. Zoning Bd. of Appeals, 114 Hawai'i 184, 194, 159 P.3d 143, 153 (2007)).

## B.    Findings of Fact and Conclusions of Law

"We consider a court's conclusions of law regarding a petition for post-conviction relief de novo, including its determination of whether a claim is waived under HRPP 40(a)(3)." Grindling v. State, 144 Hawai'i 444, 449, 445 P.3d 25, 30 (2019) (citing Fragiao v. State, 95 Hawai'i 9, 15, 18 P.3d 871, 877 (2001)).

"A court's findings of fact in connection with a petition for post-conviction relief are reviewable under the clearly erroneous standard."  Id. (citing Wilton v. State, 116 Hawai'i 106, 110 n.7, 170 P.3d 357, 361 n.7 (2007)).  A right/wrong standard is applied to the court's judgment. Fragiao, 95 Hawai'i at 15, 18 P.3d at 877 (citations omitted).

## C.    Interpretation of Court Rules

The interpretation of a court rule is reviewed de novo.  Matter of Hawaiian Elec. Co., 149 Hawai'i 343, 359, 489 P.2d 1255, 1271 (2019) (citation omitted).

"When interpreting rules promulgated by the court, principles of statutory construction apply."  State v. Mortensen-Young, 152 Hawai'i 385, 392, 526 P.3d 362, 369 (2023) (citation and internal quotation marks omitted).

## D.    Constitutional Law

"We review questions of constitutional law de novo, under the right/wrong standard.  Thus, this court exercises its

own independent constitutional judgment, based on the facts of the case." In re FG, 142 Hawaiʻi 497, 503, 421 P.3d 1267, 1273 (2018) (citations and internal quotation marks omitted).

### III.  DISCUSSION

For purposes of this appeal, the relevant part of HRPP Rule 40 is subsection (a), which states:

(a) **Proceedings and grounds.** The post-conviction proceeding established by this rule shall encompass all common law and statutory procedures for the same purpose, including habeas corpus and coram nobis; provided that the foregoing shall not be construed to limit the availability of remedies in the trial court or on direct appeal. Said proceeding shall be applicable to judgments of conviction and to custody based on judgments of conviction, as follows:

(1) FROM JUDGMENT. At any time but not prior to final judgment, any person may seek relief under the procedure set forth in this rule from the judgment of conviction, on the following grounds:

(i) that the judgment was obtained or sentence imposed in violation of the constitution of the United States or of the State of Hawaiʻi;

(ii) that the court which rendered the judgment was without jurisdiction over the person or the subject matter;

(iii) that the sentence is illegal;

(iv) that there is newly discovered evidence; or

(v) any ground which is a basis for collateral attack on the judgment.

For the purposes of this rule, a judgment is final when the time for direct appeal under Rule 4(b) of the Hawaiʻi Rules of Appellate Procedure has expired without appeal being taken, or if direct appeal was taken, when the appellate process has terminated, provided that a petition under this rule seeking relief from judgment may be filed during the pendency of direct appeal if leave is granted by order of the appellate court.

(2) FROM CUSTODY. Any person may seek relief under the procedure set forth in this rule from custody based upon a judgment of conviction, on the following grounds:

23

(i) that sentence was fully served;

(ii) that parole or probation was unlawfully revoked; or

(iii) any other ground making the custody, though not the judgment, illegal.

(3) Inapplicability. Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived. Except for a claim of illegal sentence, an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue. There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

The State contends the Rule 40 Court erred by failing to dismiss Eason's petition because Rule 40 violates this court's statutory rulemaking authority under HRS § 602-11 and thus the Rule 40 Court lacked jurisdiction. The State also asserts that Eason waived the claims in the Fifth Petition under HRPP Rule 40(a)(3), because he failed to raise these current claims in his First Petition (or in the Second, Third or Fourth Petitions).

We reject the State's first argument and hold that Rule 40 is valid under this court's constitutional rulemaking authority. We agree with the State's second argument that it appears under HRPP Rule 40(a)(3), Eason waived the claims in the Fifth Petition that his change of plea was not made voluntarily, knowingly, and intelligently. However, given the unusual

24

circumstances of this case, and in the interests of justice, we address the merits of Eason's Fifth Petition.

## A.    Legality of HRPP Rule 40 and Jurisdiction Under the Rule

The State argues that HRPP Rule 40 conflicts with statutes governing the right to appeal criminal convictions and for habeas corpus, and that it expands the substantive rights of convicted defendants, which exceeds this court's rulemaking authority.  We reject the State's argument.

Rule 40 is within this court's rulemaking authority under article VI, section 7 and HRS § 602-11, and establishes a unitary post-conviction procedure for challenging a judgment of conviction, or custody based on a judgment of conviction, under common law and statutory remedies including habeas corpus or coram nobis.

Article VI, section 7 of the Hawai'i Constitution states:

> The supreme court shall have power to promulgate rules and regulations in all civil and criminal cases for all courts relating to process, practice, procedure and appeals, which shall have the force and effect of law.

(Emphasis added.)  The identical language was previously set forth in article V, section 6 until the provision was renumbered to article VI, section 7 in 1978.

HRS § 602-11 states:

> The supreme court shall have power to promulgate rules in all civil and criminal cases for all courts relating to process, practices, procedure and appeals, which shall have the force and effect of law.  Such rules shall not abridge, enlarge, or modify the substantive

25

rights of any litigant, nor the jurisdiction of any of the courts, nor affect any statute of limitations.

Whenever in a statute it is provided that the statute is applicable "except as otherwise provided," or words to that effect, these words shall be deemed to refer to provisions of the rules of court as well as other statutory provisions.

For purposes of challenging a judgment, a Rule 40 proceeding cannot be initiated until after there is a final judgment (meaning the time for direct appeal has expired without an appeal, or if a direct appeal was taken, the appellate process has terminated). HRPP Rule 40(a)(1). HRPP Rule 40 was promulgated when the HRPP were first adopted and replaced the prior Hawaiʻi Rules of Criminal Procedure, effective January 1, 1977. The Order adopting the HRPP was issued on October 29, 1976, and stated that it was issued pursuant to article V, section 6 (which was identical to what is now article VI, section 7). Rule 40 is a procedural rule setting out the process for post-conviction relief.

### 1. The State's Arguments that Rule 40 is Invalid

After the Rule 40 Court issued its Rule 40 Order, the State challenged, for the first time, the validity of Rule 40. The State filed a motion to vacate the Rule 40 Order and to dismiss the proceedings, asserting that similar to State v. Obrero, 151 Hawaiʻi 472, 480, 517 P.3d 755, 763 (2022), where this court stated HRPP Rules 5 and 7 "flatly contradict" HRS § 801-1 (Supp. 2024), Rule 40 conflicts with certain statutes, in

26

particular those which govern appeals in criminal proceedings. Thus, the State argued, Rule 40 improperly expands defendants' substantive rights and the jurisdiction of the Rule 40 Court, in violation of the Supreme Court's rulemaking authority under HRS § 602-11.

The Rule 40 Court denied the State's motion to vacate.

On appeal, the State contends that the Circuit Court erred as a matter of law by failing to dismiss the Fifth Petition because Rule 40 violates HRS § 602-11 and HRS § 641-11 (2016),[17] such that the Rule 40 Court lacked jurisdiction. In short, the State asserts that court rules cannot expand the substantive rights of defendants to appeal their convictions and thus, the Rule 40 Court should have granted its motion to vacate. The State asserts that HRS § 641-11 exclusively confers the right of appeal from a circuit court judgment in a criminal matter, and that the appeal must be taken to the ICA. The State also points to HRS § 641-16 (2016)[18] and argues only the supreme

_____

[17]   HRS § 641-11 provides:

>     Any party aggrieved by the judgment of a circuit
> court in a criminal matter may appeal to the intermediate
> appellate court, subject to chapter 602, in the manner and
> within the time provided by the rules of court. The
> sentence of the court in a criminal case shall be the
> judgment.  All appeals shall be filed with the clerk of the
> supreme court and shall be subject to one filing fee.

[18]   HRS § 641-16 provides:

court or the ICA can affirm, reverse, or modify a criminal judgment or sentence. The State asserts there is no constitutional right to appeal and all rights to appeal are purely statutory, citing to Briones v. State, 74 Hawai'i 442, 460, 848 P.2d 966, 975 (1993) (citations omitted), and Grattafiori v. State, 79 Hawai'i 10, 13, 897 P.2d 937, 940 (1995) (citation omitted).

---

[(a)] The supreme court, or the intermediate appellate court, as the case may be, may affirm, reverse, or modify the order, judgment, or sentence of the trial court in a criminal matter. It may enter such order, judgment, or sentence, or may remand the case to the trial court for the entry of the same or for such other or further proceedings, as in its opinion the facts and law warrant. It may correct any error appearing on the record.

[(b)] In case of a conviction and sentence in a criminal case, if in its opinion the sentence is illegal or excessive it may correct the sentence to correspond with the verdict or finding or reduce the same, as the case may be. In case of a sentence to imprisonment for life not subject to parole, the court shall review the evidence to determine if the interests of justice require a new trial, whether the insufficiency of the evidence is alleged as error or not. Any order, judgment, or sentence entered by the court may be enforced by it or remitted for enforcement by the trial court.

[(c)] No order, judgment, or sentence shall be reversed or modified unless the court is of the opinion that error was committed which injuriously affected the substantial rights of the appellant. Nor shall there be a reversal in any criminal case for any defect of form merely in any indictment or information or for any matter held for the benefit of the appellant or for any finding depending on the credibility of witnesses or the weight of the evidence. Except as otherwise provided by the rules of court, there shall be no reversal for any alleged error in the admission or rejection of evidence or the giving of or refusing to give an instruction to the jury unless such alleged error was made the subject of an objection noted at the time it was committed or brought to the attention of the court in another appropriate manner.

The State further argues that HRS chapter 660 sets out the requirements for habeas corpus relief, and that under article I, section 15 of the Hawai'i Constitution,[19] only the *legislature* can suspend the right to habeas corpus for limited express reasons. The State thus challenges this court's prior decisions indicating that writs of habeas corpus have been abolished in post-conviction proceedings and that HRS chapter 660 has been superseded by Rule 40 in that regard, citing Gordon v. Maesaka-Hirata, 143 Hawai'i 335, 360 n.36, 431 P.3d 708, 733 n.36 (2018) (stating that the writ of habeas corpus has been abolished in the post-conviction context and citing to Rule 40 as creating a post-conviction proceeding that encompasses, inter alia, habeas corpus); Oili v. Chang, 57 Haw. 411, 412, 412 n.1, 557 P.2d 787, 788, 788 n.1 (1976) (dismissing a habeas corpus petition by a convicted defendant, filed in the supreme court, without prejudice to filing a complaint in circuit court under

---

[19]    Article I, section 15 of the Hawai'i Constitution states:

The privilege of the writ of habeas corpus shall not be suspended unless, when in cases of rebellion or invasion, the public safety may require it.

The power of suspending the privilege of the writ of habeas corpus, and the laws or the execution thereof, shall never be exercised except by the legislature, or by authority derived from it to be exercised in such particular cases only as the legislature shall expressly prescribe.

(Emphases added.)

HRS chapter 660, but noting that "[a]fter January 1, 1977, such proceedings will be governed by Rule 40, Hawaii Rules of Penal Procedure"); Matter of Individuals in Custody of State, No. SCPW-21-0000483, 2021 WL 4762901, at *15 (Haw. Oct. 12, 2021) (McKenna J., concurring and dissenting) (stating "[d]espite the abolishment of the writ of habeas corpus in the post-conviction context by [HRPP] Rule 40(a) (2006), the writ is still available in the pre-conviction context" (citing HRS § 660-3 (2016)). The State further asserts that writs of habeas corpus are not traditionally viewed as an appropriate vehicle to challenge a judgment of conviction.

The State reiterates that a criminal defendant's right to appeal a conviction and sentence is "encompassed entirely" in HRS § 641-11, and that this is a substantive right that this court cannot expand under any authority conveyed in HRS chapter 602. (The State does not address this court's authority under article VI, section 7.) The State also notes that HRS § 641-11 has a time limit for when a criminal appeal may be taken, whereas Rule 40 has no time limitation. Further, the State notes that HRS § 641-17 (2016) allows appeals from a limited set of "interlocutory orders" with permission from the circuit court, but a Rule 40 judgment is not one of them. Thus, the State argues, Rule 40 improperly expands the appellate jurisdiction of the ICA and this court beyond what is allowed by

statute.  The State again cites to Obrero, 151 Hawai'i at 480, 517 P.3d at 763, for the proposition that court rules "may have the force of law," but they cannot abridge, enlarge or modify the substantive rights of a party without violating HRS § 602-11.

### 2.    Eason's Argument that Rule 40 is Valid

Eason argues that Rule 40 does not conflict with a defendant's right to appeal under HRS § 641-11.  He argues that, unlike in Obrero, where two HRPP rules conflicted with HRS § 801-1 as to how felony charges could be initiated, there is no direct conflict between HRS § 641-11 and Rule 40.  HRS § 641-11 provides for a *direct appeal* to the ICA from a circuit court's judgment in a criminal case, but Eason notes that it does not indicate it is the exclusive means of challenging the judgment.

Eason also argues that his Fifth Petition sought habeas corpus relief, and that HRS § 603-21.7 (2016) provides circuit courts with jurisdiction over "actions or proceedings in or in the nature of habeas corpus . . . or in the nature of applications for writs[.]"

Finally, Eason asserts that the legislature could have, but did not, limit Rule 40 by pointing to a bill in 2019, which proposed to amend HRS chapter 660 to establish a time limit for filing habeas corpus complaints and post-conviction proceedings under Rule 40.  See S.B. 2, H.D. 1, 30th Leg., Reg.

31

Sess. (2019).  S.B. 2 was later amended to propose a task force to review and suggest updates to laws and rules regarding post-conviction relief.  See id.  Ultimately, the bill died in conference committee.  Eason notes that the judiciary submitted comments to this bill which stated:

> Pursuant to Article VI, section 7 of the Hawai'i Constitution, the supreme court "shall have power to promulgate rules and regulations in all civil and criminal cases for all courts relating to process, practice, procedures, and appeals, which shall have the force and effect of law."  In accordance with the power granted by Article VI, section 7 of the Hawai'i Constitution, the Supreme Court promulgated the Hawai'i Rules of Penal Procedure (HRPP), to establish the procedures and practices for the handing criminal cases in all state courts.  HRPP Rule 40 sets forth court procedures to govern the court processes for post-conviction proceedings.
>
> HRPP Rule 40, which has been in effect for more than forty years, encompasses all common law and other procedures for post-conviction proceedings, including habeas corpus and coram nobis.  The rule establishes when such proceedings may be filed and when a Rule 40 petition is unavailable because an issue has been previously ruled upon or waived because the issue could have been previously raised.  These limitations and other provisions in the rule have achieved the rule's objective of providing a balanced approach to post-convictions proceedings that maintain the integrity of criminal convictions while also comporting with constitutional due process requirements.

Judiciary, Testimony to House Committee on Judiciary on S.B. 2, Proposed H.D. 1, 30th Leg., Reg. Sess. (Mar. 27, 2019) (emphases added).  Eason contends that the concerns raised by the State in this case about Rule 40 were raised in the legislature, but the legislature chose not to act, thus suggesting the legislature found no impropriety with Rule 40.

### 3. HRPP Rule 40 is Valid

Article VI, section 7 of the Hawai'i Constitution provides broad authority for this court to "promulgate rules and regulations in all civil and criminal cases for all courts relating to process, practice, procedure and appeals, which shall have the force and effect of law."

The language in article VI, section 7 was originally adopted via the Constitutional Convention of 1950 and enacted in the Hawai'i Constitution following statehood, as article V, section 6. See Article V, section 6, in 1 Proceedings of the Constitutional Convention of Hawai'i of 1950 (**Proceedings of 1950**), at 424 (1960). The subject provision originated in section 10 of Committee Proposal No. 7 proposed by the Committee on Judiciary of the Constitutional Convention of Hawai'i (**Judiciary Committee**). Section 10 was adopted as proposed by the Judiciary Committee. The Judiciary Committee stated the intended purpose of the provision as follows:

> Section 10 deposits full rule-making power in the supreme court. Under this section, the court may by the promulgation of rules of court abolish archaic procedures relating to practice, procedure, process, appeals and general administration of the business of the courts. It has flexibility in that amendments to rules can be made from time to time by the court without resort to the slower legislative process.

Stand. Comm. Rep. No. 37, in 1 Proceedings of 1950, at 175 (1960) (emphases added). Moreover, during the convention

debates, the Chairman of the Judiciary Committee explained

section 10 as follows:

> Section 10 is an extremely important section, . . . which
> deposits in the supreme court the rule-making power,
> governing practice, procedure, [and] appeals in all of the
> courts.  That is one of the most needed provisions that we
> have and the way it will work is this[:] The supreme court,
> following the pattern set by the Supreme Court of the
> United States, will call in a group of lawyers, have them
> draft rules, then there will be publication of the rules
> for a stated number of months, and after everybody has had
> his say about it, the rules will become effective.  When
> they become effective, they will have the force and effect
> of law.  It has the great merit of this.  If there is
> something awkward or inconvenient in any rule, that can be
> called to the attention of the court and after full
> exploration can be promptly corrected.  In other words, you
> don't have to wait for the next session of the legislature.

Debates in the Comm. of the Whole on Judiciary (Article V), in 2

Proceedings of 1950, at 359 (1961).

This court adopted Rule 40 as part of the HRPP,

effective January 1, 1977, citing article V, section 6 as the

authority.  Order Promulgating Rules of Penal Procedure 198

(Haw. Oct. 29, 1976).  A "Note to Rule 40," appended to the

proposed version of Rule 40, stated that Rule 40 was new, and

that "[t]he concept of a unitary post-conviction procedure for

post-conviction challenges is recommended by the ABA Standards

Relating to Post-Conviction Remedies, and it is adopted in Rule

40."  Proposed Hawaii Rules of Penal Procedure at 204-05 (Sept.

15, 1975).  With regard to the challenge to a judgment of

conviction, this note also states:

> The grounds set forth are substantially those set forth in
> [American Bar Association] Standard 2.1 and are the usual
> ones on which habeas is sought, and any others are taken
> care of in the catch-all clause.  It should be noted,

> however, that the ground of "newly discovered evidence" is the same ground as that on which a new trial could be granted under [Hawai'i Rules of Criminal Procedure] 33 and Federal Rule 33.

Id. at 207

When adopted in 1977, like the current version, Rule 40 allowed a challenge to a criminal judgment based on a violation of the U.S. or Hawai'i Constitutions, lack of jurisdiction by the court rendering the judgment, illegal sentence, newly discovered evidence, or any ground which is a basis for collateral attack on the judgment. The purpose of the rule was to provide one comprehensive procedure for addressing post-conviction relief as allowed, or similarly allowed, under existing substantive law. HRPP Rule 40(a)(1).

For purposes of this case, Eason's Fifth Petition and the Supplement thereto asserted that his *constitutional rights* were violated and that his petition was based on HRPP Rule 40(a)(1)(i) (that the judgment was obtained or sentence imposed in violation of the constitution of the United States or of the State of Hawai'i). The State's argument that Rule 40 impermissibly expanded Eason's substantive right to bring this post-conviction challenge is incorrect. Prior to the promulgation of Rule 40 in 1977, Hawai'i courts were addressing actions for writs of habeas corpus or coram nobis where petitioners asserted post-conviction challenges on constitutional grounds. See Oili, 57 Haw. 411, 557 P.2d 787

35

(dismissing without prejudice petitioner's post-conviction petition for writ of habeas corpus, which asserted ineffective assistance of counsel, and declining to proceed on the court's concurrent jurisdiction where an evidentiary hearing was required and relief was available in the circuit court);[20] Carvalho v. Olim, 55 Haw. 336, 519 P.2d 892 (1974) (setting aside petitioner's post-conviction writ of coram nobis and remanding the case for the lower court to issue a writ of habeas corpus after concluding the State failed to carry its burden of proving that petitioner voluntarily and intelligently waived his right to counsel, or voluntarily and understandingly entered his guilty plea); Reponte v. State, 57 Haw. 354, 360-64, 556 P.2d 577, 582-84 (1976) (denying petitioner's post-conviction writ of coram nobis and concluding the petitioner both voluntarily waived counsel and pled guilty); Russell v. Blackwell, 53 Haw. 274, 492 P.2d 953 (1972) (affirming the circuit court's denial of petitioner's post-conviction writ of habeas corpus and concluding that the petitioner's plea was made voluntarily and understandingly); Wong v. Among, 52 Haw. 420, 477 P.2d 630 (1970) (granting the petitioner's writ of habeas corpus after concluding under the circumstances of that case

---

[20]    In a footnote, the court stated that "[a]fter January 1, 1977, such proceedings will be governed by Rule 40, Hawaii Rules of Penal Procedure." Oili, 57 Haw. at 412 n.1, 557 P.2d at 788 n.1.

that the State failed to carry its burden of proving the petitioner voluntarily and intelligently waived his right to counsel and entered guilty pleas).[21]

Thus, starting with Oili in 1976, almost fifty years ago, this court has recognized that Rule 40 governs post-conviction proceedings in the nature of writs for habeas corpus and coram nobis, including challenges to judgments in criminal cases on grounds that a petitioner's constitutional rights were allegedly violated.  The cases cited above also recognize that such post-judgment actions for relief could be brought in the circuit courts.  See also HRS § 603-21.7(2); HRS § 660-3.  Thus, we reject the State's argument that the ICA and this court have exclusive jurisdiction for purposes of post-conviction review of a judgment in a criminal case.  Rather, we hold that Eason's Fifth Petition for relief on grounds that his constitutional

---

[21]     Earlier Hawai'i cases held that writs of habeas corpus were to address situations where the court issuing a judgment lacked jurisdiction and not to correct errors of the trial court.  See In re Application of Gamaya, 25 Haw. 414, 416 (Haw. Terr. 1920) ("It is well settled that a writ of habeas corpus will not be permitted to perform the functions of a writ of error or appeal for the purpose of reviewing errors or irregularities in proceedings of a court having jurisdiction over the person and the subject-matter."); see also In re Application of Palakiko and Majors, 39 Haw. 167 (Haw. Terr. 1951); In re Application of Abreu, 27 Haw. 237 (Haw. Terr. 1923).  However, as noted in the pre-Rule 40 Hawai'i cases cited in the text, the grounds for habeas corpus relief expanded over time.  See also Clarke D. Forsythe, The Historical Origins of Broad Federal Habeas Review Reconsidered, 70 Notre Dame L. Rev.  1079, 1143 (1995) (noting that in Brown v. Allen, 344 U.S. 443 (1953), the U.S. Supreme Court "assumed, for the first time, that the purpose of habeas is to make sure that no constitutional error has been made, and thus effectively overruled the nearly 130 year old rule of [Ex Parte Watkins, 28 U.S. 193 (1830)] that habeas corpus is not to serve as an appeal" (footnote omitted)).

rights were violated in obtaining the judgment against him was properly brought in the Circuit Court.

With regard to the State's argument that Rule 40 conflicts with HRS chapter 660 (Habeas Corpus), which was originally adopted in 1870, this court has properly recognized that in the post-conviction context, the procedures in Rule 40 supersede chapter 660. See Maesaka-Hirata, 143 Hawai'i at 360 n.36, 431 P.3d at 733 n.36 (citing HRPP Rule 40(a)); Oili, 57 Haw. at 412 n.1, 557 P.2d at 788 n.1; Matter of Individuals in Custody of State, 2021 WL 4762901, at *15 (citation omitted).

Consistent with this holding, however, we overrule Gordon v. Maesaka-Hirata, to the extent it stated the writ of habeas corpus has been *abolished* in the post-conviction context. See 143 Hawai'i at 360 n.36, 431 P.3d 733 n.36. Rule 40 has not "abolished" habeas corpus actions post-judgment, instead the procedures in Rule 40 now apply, rather than the procedures set out in HRS chapter 660. In other words, to the extent that Rule 40 process and procedure conflicts with statutes dealing with procedural matters (for habeas corpus actions, see HRS chapter 660), this court's rules prevail under article VI, section 7. See State v. Hawaiian Dredging Co., 48 Haw. 152, 159, 397 P.2d 593, 599 (1964) (noting that a statute "might well be a procedural matter" that would be rendered ineffective upon

adoption of rules covering the same matter under the supreme court's constitutional rulemaking authority).

Finally, this case is distinguishable from Obrero. There, the majority stated:

> The State is right that HRPP Rules 5 and 7 — which authorize the use of the complaint-and-preliminary-hearing process to initiate felony prosecutions — flatly contradict HRS § 801-1. But these are rules made by the Supreme Court, not laws enacted by the legislature. These rules may have the force of law, but they may never "abridge, enlarge, or modify the substantive rights of any litigant." HRS § 602-11. As we explained in Cox v. Cox, "[w]here a court-made rule affecting litigants' substantive rights contravenes the dictates of a parallel statute, the rule must give way." 138 Hawai'i 476, 482, 382 P.3d 288, 294 (2016).

151 Hawai'i at 480, 517 P.3d at 763 (footnotes omitted). The majority's view in Obrero was that HRPP Rules 5 and 7 affected the defendant's substantive rights. Here, to the contrary, Rule 40 did not affect Eason's substantive rights. Even before Rule 40 was adopted in 1977, criminal defendants were allowed to seek post-conviction habeas corpus relief from judgments in criminal cases based on alleged constitutional violations. Rule 40 provides for a uniform procedure for seeking such relief.

In sum, therefore, we reject the State's argument seeking to invalidate Rule 40 and thus asserting the Rule 40 Court lacked jurisdiction in this case. We hold that Rule 40 is valid.

**B.    Eason's Fifth Petition**

We next address Eason's Fifth Petition.  Eason alleged two grounds as a basis for relief: (1) that a change of plea hearing requires a complete and clear on-the-record colloquy, and here, there is no record (**First Issue**); and (2) a plea of no contest requires the record to show the plea was made voluntarily, knowingly, and intelligently and here, Eason's plea did not meet this standard (**Second Issue**).

Eason's First Issue only exists because by the time he filed the Fifth Petition in 2021, more than seventeen years after his conviction, the digital recordings and stenographer notes for the March 31, 2004 change of plea hearing no longer existed.  Further, if he had raised his Second Issue in his First Petition, filed in 2008 and thus about four years after his conviction, the recordings and notes from the March 31, 2004 hearing would still have existed and the details of his change of plea hearing would be available.

Typically, it appears Eason's Fifth Petition claims would be waived, and it does not appear that the lack of a competency determination would in and of itself overcome the presumption of waiver.  However, taking into consideration all the circumstances of this case, including Eason's mental health issues, his belated efforts to obtain transcripts of the change of plea hearing when the records were still available, and the

40

later disposal of court records, we conclude that here, the interests of justice warrant reaching the merits of his Fifth Petition.

### 1.   Waiver Under Rule 40(a)(3)

The threshold consideration for a Rule 40 petition is whether the petitioner has waived their claim by failing to raise it in prior petitions.  Rule 40(a)(3) provides, in pertinent part:

> an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised . . . in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue.  There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

See also Fagaragan v. State, 132 Hawai'i 224, 235, 320 P.3d 889, 900 (2014) (citing Fragiao, 95 Hawai'i at 15-16, 18 P.3d at 877-78).

If the petitioner presents sufficient evidence "to rebut the presumption, then the court is not required to assess whether petitioner had proved the existence of extraordinary circumstances."  Id. at 237-38, 320 P.3d at 902-03 (citations and footnote omitted).

Although the Rule 40 Court cited HRPP 40(a)(3) and Fagaragan, it instead determined that Eason's competency was the key issue to the waiver analysis.  The Rule 40 Court concluded

41

"the evidence that no determination of [Eason's] competency was ever made prior to the entry of [Eason's] plea of no contest" was sufficient to rebut the presumption that Eason's failure to raise the issues in his First Petition was a knowing and understanding failure.

We conclude the Rule 40 Court erred in holding that, because there is no record of a finding of Eason's competency before his no contest plea, this was a dispositive factor. The Rule 40 Court concluded:

> Because the issue of Petitioner's fitness was never determined, there is a shadow of doubt hanging over all subsequent proceedings, including the post-conviction proceedings, regarding the level of his understanding. In other words, the Court cannot ignore the "original sin" of the trial court's failure to make a competency determination and then proceed to conclude that Petitioner's failure to raise that same issue (or his failure to raise the related issue of the voluntariness of his plea) is "knowing and understanding."

Whether there was a finding of fitness during the March 31, 2004 hearing cannot be determined without a transcript, which Eason failed to effectively pursue until 2019.

The Rule 40 Court also concluded that:

> In this case, the combination of the unusual circumstances surrounding the Petitioner's change of plea, the destruction of the records necessary to prepare a transcript of the hearing, and the failure of the court to address the matter of Petitioner's competence, would rise to the level of <u>extraordinary circumstances</u> sufficient to warrant overriding Rule 40's waiver provision.

(Emphasis added.)

"Extraordinary circumstances" are circumstances which would explain a petitioner's failure to raise their claim in a

42

prior petition.  The Rule 40 Court incorrectly concluded that these three circumstances together rise to the level of extraordinary for Rule 40 purposes, because these circumstances do not explain Eason's failure to raise the Second Issue in his First Petition.

Therefore, under the waiver analysis in Rule 40(a)(3) and Fagaragan, it appears Eason could have raised his Second Issue in his First Petition.  He certainly was active in filing four prior petitions raising various issues other than his change of plea.  He also testified to the Rule 40 Court that he always felt something was wrong with his change of plea.

Of note, however, there are some unusual circumstances in this case, such as issues about Eason's mental health, his ninth-grade education, that Eason sought to obtain transcripts of the change of plea hearing while they still existed but was not successful in obtaining them, and the later disposal of court records.

We conclude that considering the unusual circumstances of this case, in the interests of justice, we will address the merits of Eason's Fifth Petition.  See, e.g., Gilbert v. State, 2 N.W.3d 483, 487 (Minn. 2024) (stating that under Minnesota case law, one exception to the procedural bar for unraised claims is "if the interests of justice require review" (citations omitted)).

##### 2. Constitutional Validity of No Contest Plea

In his Fifth Petition, Eason contends his no contest plea was not made voluntarily because his mother and Olson coerced him into taking the plea. He asserts his plea was not made knowingly because the colloquy was incomplete and "very brief," and that he was not told that by taking the plea, he would not be able to call witnesses or tell his side of the story, nor was he told he would be giving up the rights to a jury or bench trial. In his Supplement, he additionally contends his plea was not made intelligently, as he did not fully understand the nature of the charge against him and how "adding 'not heinous, atrocious and/or cruel' to the plea form mattered."

The U.S. Constitution and the Hawai'i Constitution require a plea to be voluntarily and knowingly entered. See, e.g., Merino, 81 Hawai'i at 217, 915 P.2d at 691 (explaining HRPP 11 implements this constitutional requirement (citing State v. Dicks, 57 Haw. 46, 49, 549 P.2d 727, 730 (1976); State v. Vaitogi, 59 Haw. 592, 597-98, 585 P.2d, 1259, 1262-63 (1978); and Boykin v. Alabama, 395 U.S. 238, 242-43 (1969))). This is because "[a] plea of guilty [or no contest] in itself is a conviction and a simultaneous waiver of several important constitutional guarantees - the privilege against self-incrimination, a trial by jury, and the confrontation of one's

accusers.  Such a waiver is not constitutionally acceptable unless made voluntarily and with full understanding of the consequences."  Among, 52 Haw. at 425, 477 P.2d at 634 (first citing Kercheval v. United States, 274 U.S. 220, 223 (1927); then citing McCarthy v. United States, 394 U.S. 459, 466 (1969); and then citing State v. Casey, 51 Haw. 99, 451 P.2d 806 (1969)).  "The standard for determining the constitutional validity of guilty [or no contest] pleas 'was and remains whether the plea represents a voluntary and intelligent choice among the alternate courses of action open to the defendant.'" Reponte, 57 Haw. at 362, 556 P.2d at 583 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

Hawai'i case law requires the circuit court make an affirmative showing by an on-the-record colloquy "wherein the defendant is shown to have a full understanding of what the plea of guilty [or no contest] connotes and its consequences."  E.g., Vaitogi, 59 Haw. at 601, 585 P.2d at 1265; see also State v. Hernandez, 143 Hawai'i 501, 515, 431 P.3d 1274, 1288 (2018) (concluding it was plain error for district court to accept defendant's no contest plea because the court failed to engage defendant in an on-the-record colloquy to ascertain whether plea was made knowingly, intelligently, and voluntarily (footnote omitted)). Although this colloquy is required, no specific "ritualistic litany"

is needed.  <u>Vaitogi</u>, 59 Haw. at 601, 585 P.2d at 1265.  This colloquy requirement is codified in HRPP Rule 11 (eff. 2024).[22]

---

[22]    HRPP Rule 11 provides, in pertinent part:

>     **(b)  No contest.**  A defendant may plead no contest only with the consent of the court.  Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice.
>
>     **(c)  Advice to defendant.**  The court shall not accept a plea of guilty or no contest without first addressing the defendant personally in open court, or by video conference with defendant's consent and affirmation of defendant's identity on the record, and determining that the defendant understands the following:
>
>     (1) the nature of the charge to which the plea is offered; and
>
>     (2) the maximum penalty provided by law, and the maximum sentence of extended term of imprisonment, which may be imposed for the offense to which the plea is offered; and
>
>     (3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made; and
>
>     (4) that if the defendant pleads guilty or no contest there will not be a further trial of any kind, so that by pleading guilty or no contest the right to a trial is waived.
>
>     . . . .
>
>     **(e)  Insuring that the plea is voluntary.**  The court shall not accept a plea of guilty or no contest without first addressing the defendant personally in open court, or by video conference after defendant's consent and affirmation of defendant's identity on the record, and determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement.  The court shall also inquire as to whether the defendant's willingness to plead guilty or no contest results from any plea agreement.

a.    The Rule 40 Court erred in concluding the record
was minimal.

First, we hold that the record in this case was not minimal.

When the record is not silent or minimal, the petitioner seeking relief under Rule 40 on the ground that the guilty plea was entered involuntarily has the burden "to prove by a preponderance of the evidence that his constitutional right was not voluntarily and intelligently waived." Eli v. State, 63 Haw. 474, 477, 630 P.2d 113, 116 (1981) (citation omitted). Because "[t]he record must affirmatively show that the plea was voluntary," Vaitogi, 59 Hawai'i at 601, 585 P.2d at 1264, when the record is silent or minimal, the "presumption is that the petitioner did not voluntarily and understandingly enter his pleas of guilty." Among, 52 Haw. at 425, 477 P.2d at 634 (citations omitted). If the record is silent or minimal, the State has the burden of proving the validity of a petitioner's plea. See, e.g., id.; Eli, 63 Haw. at 477, 630 P.2d at 116 (citation omitted); Reponte, 57 Haw. at 360, 556 P.2d at 582 (citations omitted).

This is not a case of a silent record. The record includes the clerk's minutes of the change of plea hearing; a change of plea form signed by Eason; Olson's declaration, filed after the change of plea hearing; Ret. Judge Ibarra's

47

Certificate; transcripts from other hearings in the criminal case, including the preliminary District Court hearing and the sentencing hearing; three examiner's reports; Eason's presentence report; and testimony at the Rule 40 Court's evidentiary hearing. However, the Rule 40 Court concluded this record was minimal, stating:

> In this case, the official record from Mr. Eason's change of plea hearing is not silent, but it is so minimal that the contents of the colloquy that occurred between the court and the Petitioner could only be proved by extrinsic evidence. Moreover, the Court has determined that the failure to develop an adequate record in this case cannot be attributed to the actions of the Petitioner. Therefore, the burden falls upon the State to prove that Petitioner's plea was knowingly, voluntarily, and intelligently made.

(Emphases added.)

> Further, the Rule 40 Court concluded:

> The State has failed to show evidence sufficient to overcome the presumption in favor of the Petitioner and to prove that Petitioner's plea was voluntarily made after an on-the-record colloquy. The evidence of what actually occurred on March 31, 2004 is scant, and there is no reliable evidence as to the specific contents of the court's colloquy with the Petitioner. The recollections of those who were present in court that day have diminished with time and are now either non-existent or unreliable. The clerk's minutes are devoid of any specifics about the nature of the court's questioning. The Court also cannot rely upon the information in the plea form to ascertain if a proper colloquy took place, due to the numerous inconsistencies and omissions that render the credibility of this document dubious at best.

We disagree with the Rule 40 Court and conclude the record in this case is not minimal. An example of a minimal record is in Carvalho v. Olim, 55 Haw. 336, 519 P.2d 892 (1974), where the issues were whether the petitioner voluntarily and intelligently waived his right to counsel and pled guilty. This court described the record up

to petitioner's arraignment when he pled guilty as minimal and "not helpful" and which consisted of the following:

> The existing record consists of the <u>complaint</u> charging petitioner with first degree murder; a '<u>Commitment for Trial by Jury</u>', the <u>indictment</u> for first degree murder; a '<u>Mittimus</u>', indicating the conviction and sentencing of petitioner for first degree murder; a <u>disposition report</u> indicating petitioner's plea of guilty and the sentence of life imprisonment; a <u>letter from petitioner</u> requesting the court to reopen his case on the ground that he was not aware of what he was doing at the time of the arraignment, and also requesting that he be given a psychiatric examination; <u>a letter from the trial judge</u> requesting petitioner be given a psychiatric examination; and a <u>letter and report from the prison officials</u> concerning the psychiatric examination indicating that petitioner was impulsive and 'an inadequate individual whose few defenses are easily overwhelmed by the frustrations of living'.

<u>Id.</u> at 337-38, 342, 519 P.2d at 894, 896 (emphases added). There was no transcript or minutes of the arraignment. <u>Id.</u> at 338, 519 P.2d at 894. During post-conviction proceedings, the court had to adduce evidence by way of testimony of those who were present for petitioner's arraignment and plea. <u>Id.</u> Petitioner, who had waived his right to counsel, was never given a copy of the indictment and as such, could not study the nature of the charges against him and could not "fully evaluate his legal position and subsequently enter an intelligent plea." <u>Id.</u> at 343-44, 519 P.2d at 897-98 (citation omitted). Additionally, petitioner was never informed of the elements for murder, which was necessary for petitioner to make the decision to plead guilty with full knowledge of the consequences. <u>Id.</u> at 344, 519 P.2d at 898 (citation omitted). Lastly, petitioner was not informed of the defenses available to him. <u>Id.</u>

49

Here, the record of Eason's criminal case is far more extensive than the record of the arraignment in Carvalho. Contrary to Eason's assertion that no record exists of his change of plea hearing, the clerk's minutes and change of plea form do exist. We conclude the clerk's minutes and Eason's signed change of plea form, together with transcripts from preliminary District Court hearings and Circuit Court hearings; Olson's declaration; Ret. Judge Ibarra's Certificate; three examiner's reports; Eason's presentence report; transcripts from the sentencing hearing; and testimony in the Rule 40 Court from those present during the underlying criminal case – does not constitute a minimal record. We hold that the Rule 40 Court erred by shifting the burden from Eason to the State to prove whether his no contest plea was made voluntarily, knowingly, and intelligently.

The record in this case, even without a transcript from the March 31, 2004 change of plea hearing, enables us to resolve Eason's claims. State v. Ganotisi, 79 Hawai'i 342, 343, 902 P.2d 977, 978 (App. 1995) ("Although an indigent criminal defendant is entitled to be provided with a 'record of sufficient completeness' to permit proper consideration of the defendant's claims on appeal, Mayer v. City of Chicago, [404 U.S. 189, 193-94] (1971), a full verbatim transcript of the trial proceedings is not automatically required, especially if

other alternatives are available to assure the defendant a fair appellate review.").

We hold that because the record is not minimal, it was Eason's burden to prove his plea was not valid. On this record and for the reasons set forth below, we conclude Eason's plea was made voluntarily, knowingly, and intelligently.

### b. Eason's plea was made voluntarily.

Regarding challenges to voluntariness in Rule 40 petitions, this court has stated:

> In a petition seeking relief under Rule 40 on ground that the guilty plea was entered into involuntarily, the court is required to look at the entire record in order to determine whether the petitioner's claims or recantation are credible and worthy of belief. The record is vital to the ultimate determination of whether the plea was made voluntarily; as this court has repeatedly emphasized, it will not presume from a silent record a waiver of a constitutional right.

Eli, 63 Haw. at 477, 630 P.2d at 115 (emphases added) (citing Medeiros v. State, 63 Haw. 162, 623 P.2d 86 (1981); and Mara v. Naauao, 51 Haw. 322, 459 P.2d 382 (1969)).

Although the record does not contain an on-the-record colloquy due to the disposal of certain records, we evaluate the entire record in order to determine whether Eason's claims are credible and worthy of belief. See id.

Eason contends his plea was not voluntary because Olson and his mother coerced him into taking the plea. He explains that Olson recommended Eason take the no contest plea because if Eason went to trial he would probably lose, because

51

"any jury from [the Big Island] won't be sympathetic to you." Eason states that Olson told him if he lost, he would spend the rest of his life in prison, and this scared Eason and compelled him to reluctantly agree to take the plea. Eason claims he remained reluctant on the day of the change of plea hearing, during which an "unusual" closed session was held between the Circuit Court and Olson. Eason does not mention he was also present for this session.

After the closed session, Eason spoke to his mother on Olson's cell phone, and she urged him to take the plea, and he asserts that this was "blatant coercion." Eason states, "[h]aving no experience with the law or court proceedings, and being pressured both by his mother – a very intelligent woman who loved him – and Olson, a legal expert sworn to defend him, [Eason] conceded to the pressure and pled No Contest." He claims he did not realize that such coercion was illegal until 2019.

The clerk's minutes, Eason's presentence report, Ret. Judge Ibarra's Certificate, testimony at the Rule 40 proceedings, the 704 examiners' reports, and the change of plea form, together support our conclusion that Eason's plea was voluntary and his present claim of illegal coercion is not credible or worthy of belief.

First, the minutes from the March 31, 2004 hearing explicitly state that the "COURT, UPON QUESTIONING [DEFENDANT] AND COUNSEL, <u>FINDS THAT [DEFENDANT] VOLUNTARILY ENTERED PLEA OF NO CONTEST</u> WITH AN UNDERSTANDING OF THE NATURE OF THE CHARGES AGAINST HIM AND THE CONSEQUENCES OF HIS PLEA." (Emphasis added.)

Second, the presentence report that Olson reviewed with Eason demonstrates Eason voluntarily took the plea. In an interview for the report, Eason claimed a third person was also involved with Hackmeyer's murder. The report interviewer stated that Eason told her "he took the plea bargain to keep himself safe from this third person. He stated he would rather not 'give up' this third party and be imprisoned for life, than to 'rat him out' and wind up in prison with him for twenty years, with the constant threat of being killed by him in prison." Eason understood that by taking the plea, he might be imprisoned for life, and voluntarily took the plea anyway. Eason provided his personal rationale for why he took the plea, and did not mention the coercion by his mother and Olson that he now alleges in his Fifth Petition.

Third, Ret. Judge Ibarra's Certificate supports the conclusion that Eason's plea was voluntary. While Ret. Judge Ibarra has no recollection of the proceedings, he stated, under penalty of perjury, that he saw in the record that he met with

Eason and Olson, excluding the prosecutor. He stated, "based on my experience, the reason for this would have been to make sure that the defendant would be going forward on his own volition and understood his rights." Considered together with other documents, Ret. Judge Ibarra's statement supports the conclusion that Eason's plea was voluntary.

Fourth, testimony in the Rule 40 Court supports the conclusion that Eason's plea was voluntary. Dale Ross, the DPA who prosecuted the criminal case, testified that she was present at the change of plea hearing. She testified that during the hearing, Eason stated he was not taking the blame for someone else for the murder and crossed out the statement on the change of plea form that "[s]omeone else actually committed the murder."[23] She testified that this was an "unusual change of plea" because of the "seriousness of the offense." As a result, "everybody was really paying attention." She stated that because the change of plea form stated someone else had committed the murder, "that had to be really carefully reviewed" and Ret. Judge Ibarra was very careful about this. She also testified that she was "really watching carefully because I wanted to make sure that he was changing his plea voluntarily and intelligently[.]"

---

[23]     Eason also testified to the Rule 40 Court that he crossed out this statement.

Fifth, the three 704 examiner reports support the conclusion that Eason's plea was voluntary. All three examiners determined that Eason was fit to proceed. Not one opined or suggested that he lacked the capacity to understand the proceedings against him or to assist in his own defense as a result of any physical or mental disease, disorder, or defect. These reports indicate that Eason was fully able to comprehend the plea and enter it voluntarily.

Sixth, as discussed in further detail below, Eason signed the change of plea form, which explicitly states his plea was voluntary: "I plead of my own free will. No one is pressuring me or threatening me or any other person to force me to plead. I am not taking the blame or pleading to protect another person from prosecution."

On this record, we conclude the Rule 40 Court erred in concluding that the evidence in the record "evinces conditions that reasonably could have constituted undue pressure on the Petitioner under the totality of the circumstances." The Rule 40 Court characterizes the change of plea hearing as "intense, rushed, and frazzled," and that the circumstances were "abnormally stressful and emotionally charged." To the contrary, the clerk's minutes state that Ret. Judge Ibarra's conference with Olson and Eason lasted almost an hour, and the change of plea hearing thereafter lasted approximately forty

55

minutes.  Olson's declaration attests he was in court for over two hours that day.  If anything, the intense nature of the hearing supports the conclusion that Eason was aware that he was making the profound choice to take a plea with a sentence of life imprisonment with the possibility of parole.

> **c.    Eason's plea was made knowingly and intelligently.**

Eason contends that he also did not enter his plea knowingly and intelligently.  He alleges the colloquy was "very brief."  He claims that he was not told about the consequences of the plea, including that he would not be able to call witnesses or present his side of what took place; that he was giving up the rights to a jury and bench trial.  He claims he did not fully understand the nature of the charge against him and "lacked understanding of how adding 'not heinous, atrocious and/or cruel' to the plea form mattered."  Eason also contends he "did not fully understand what sentence he would receive," and pointed to the plea form, which he asserts stated he could receive other penalties.  He points to inconsistencies in the plea form.

In addition, Eason contends the court should consider other circumstances, including that he had a tenth-grade

education,[24] was on medication, was not communicating with Olson, and because proceedings were suspended under HRS § 704.

We conclude the record shows that Eason's no contest plea was made knowingly and intelligently.

To begin with, the clerk's minutes state: "COURT FINDS FACTUAL BASIS TO SUPPORT THE NO CONTEST PLEA. COURT, UPON QUESTIONING [DEFENDANT] AND COUNSEL, FINDS THAT [DEFENDANT] VOLUNTARILY ENTERED PLEA OF NO CONTEST WITH AN UNDERSTANDING OF THE NATURE OF THE CHARGES AGAINST HIM AND THE CONSEQUENCES OF HIS PLEA." (Emphases added.) Although Eason states the court's colloquy was "very brief," the minutes indicate court proceedings lasted approximately forty minutes after the closed session, with the written plea filed in open court at the end of the hearing.

Second, letters from Olson to Eason which were admitted in the Rule 40 Court proceedings, show that following the prosecutor's July 14, 2003 plea offer, up until the change of plea hearing, Olson repeatedly explained the case to Eason, including the plea offer, available defenses, and the challenges of a jury trial.

On August 4, 2003, Olson wrote to Eason to tell him that he should reconsider the State's plea offer. He told

_____

24      The record reflects Eason had a ninth-grade education.

Eason, "there are several immense obstacles in front of us," and listed facts that would "strongly indicate, to a juror, that this case involves more than just a bad fight/self-defense, in my opinion."

On August 20, 2003, Olson again wrote to Eason to summarize their recent communications, which included discussion of the plea bargain and Eason's decision to go through with the 704 panel. Olson told Eason that should the 704 panel report that Eason is deceptive (as Eason's privately-hired psychologist had indicated), this "would damage your case before the court and the parole board (if your case goes before the parole board)." Olson wrote:

> As we have discussed, the plea bargain decision is yours alone to make.
>
> The plea bargain is good because it gives you a chance for parole, but there is no guarantee. You could be given and 20, 30 or 40-year minimum or higher or lower or you could be denied parole altogether. If you are sentenced to life without the possibility [of parole], you will never be paroled, even if you have years and years of good behavior.

On November 25, 2003, Olson wrote to Eason and again explained his advice. He expressed to Eason that the "court will not allow you to enter a plea if you say that you are taking the rap for someone else." He again repeated that the decision was Eason's and "[t]here is no way of knowing what minimum sentence the parole board will give you. . . . So you cannot count on getting 10, 20, 30 year minimum. It could be more. It could be less. The parole board might wait for a

while before giving you a minimum.  The parole board could deny parole."

On December 5, 2003, Olson wrote to Eason stating that "[a]t OCCC we met and went over the No Contest Plea form – word by word.  We discussed the case again in detail.  You wanted to take the plea bargain and had no reservation in doing so." Olson informed Eason that two of the expert examiners found him mentally competent.  He reiterated that it was Eason's choice and stated "[i]f you say that someone else did the crime, the judge will question you and may refuse to accept your plea.  If so, the prosecutor may withdraw its offer.  In any event, I urge that you tell the truth."

On February 23, 2004, Olson wrote to Eason explaining how Eason's refusal to name the alleged killer hurts his case, and if Eason testifies that there was another killer without first providing any information for Olson to gather evidence, it hurts Eason's case.  Olson stated, "[a] trial, in terms of the jury's perception of you, involves an intricate series of interactions and observations.  Sometimes a single thing – such as a refusal to name the killer – will alone set the jury against you."

On March 24, 2004, he wrote to Eason urging him to cooperate, as Eason had still not given Olson a complete factual

account of the incident.  Olson stated that during the hearing

on Olson's second motion to withdraw:

> The court informed you that if you elect not to cooperate
> and you are convicted, you will be prevented from coming
> back to court and asking that the conviction be reversed
> because your attorney did not pursue certain evidence.  I
> agree with the judge, but it is even more important than
> that.
>
> In the murder case you have confessed.  Unless we can
> discredit your statement to the police or get the judge to
> reconsider the motion to suppress your statements, you will
> have to take the stand and testify.  I must know what you
> are going to say.  That is a big reason why I am asking you
> to tell me in writing what happened in [the case].  You
> have changed your story every time we have talked about the
> murder.  My hope is that by writing it out you can form and
> give me a consistent story.
>
> My opinion of the case at present is that if you do not
> name the man you claim did the crime, the jury will convict
> you because the jury will not believe you.
>
> My opinion is that the jury will conclude that this person
> is non-existent.  However, I am willing to present a
> defense for you anyway, but you have to tell me the facts.
>
> . . . .
>
> You now say that you wish to go ahead with the plea
> bargain.
>
> I have filled out the attached form.  Please note the
> sentence I have added: "I believe someone else actually did
> the murder."  Is that what you want to say?  If so, the
> Judge will question you and may refuse to accept your plea.
>
> My problem is that I cannot stand by and let you lie to the
> court.  You have asked me to "do this one favor" lie to the
> court.  "Go along with me."  I explained to you that I will
> not lie to the court.
>
> . . . .
>
> Please understand I am not advising you to take the plea
> bargain.  It is your decision and your decision alone
> whether you want to take the plea bargain.
>
> You tell me that you are forced to take the plea.  I can
> understand the pressure you must feel.  You are in a
> stressful situation.  But as I have told you repeatedly,
> you must make a decision.  Not doing anything is also
> making a decision.  I am not advising you to accept or

> refuse the plea bargain — either course involves risk. The decision is yours.

Eason contends he did not understand by entering the plea, he would be giving up the right to a jury trial. Olson clearly explained the challenges Eason would face should the case proceed to trial, especially given Eason's refusal to give him the facts of the case, which is one reason he told Eason the plea bargain was good. Olson stated that having a jury trial, as opposed to taking the plea, could result in a life sentence without the possibility of parole. These communications between Olson and Eason indicate Eason was aware of alternate courses of action open to him and voluntarily chose to take the plea, and that by doing so, he would not have a jury trial. See Reponte, 57 Haw. at 362, 556 P.2d at 583 (citation omitted).

In addition to these letters, Olson testified in the Rule 40 Court that he told Eason that by entering the plea bargain, Eason would give up his right to a jury trial and could no longer call witnesses. He also testified about going over the plea form with Eason at least four times.

Third, although there is no transcript for the March 31, 2004 hearing, the transcript from the hearing immediately prior to the change of plea hearing demonstrates that contrary to Eason's contention, he understood the nature of the charges against him. Ret. Judge Ibarra interacted extensively with Eason to ensure he understood, for example, the seriousness of

the charge, and that if convicted, he would face life without the possibility of parole.

During the March 11, 2004 hearing on Olson's second motion to withdraw, Ret. Judge Ibarra explained to Eason as follows:

> So you're charged with the most serious crime, most serious. There's nothing more serious in the penal code in the State of Hawaii as far as [the] sentence, life without the possibility of parole. And that's why, you know, your lawyer is concerned, I can see, and he has to pursue every defense on your behalf.
>
> . . . .
>
> And you know -- I don't know what the result would be if Mr. Olson, or any lawyer who might represent you in this murder trial, although trying their best -- and I don't know what the outcome would be in a jury trial, whether you will be found guilty or not guilty. But if you are found guilty and you are sentenced to life without the possibility of parole, you will not be able to come back to court and say, "Well, my lawyer should have pursued this line of defense," when you do not cooperate with your lawyer, which may result in your conviction. Do you understand what I am saying?
>
> MR. EASON: Yeah.

(Emphases added.)

Ret. Judge Ibarra then repeated:

> [I]f you are convicted and you do not -- because you do not answer the questions your lawyer has requested of you, you will not be able to come back to a court and tell that court your lawyer should have pursued that line of questioning or defense for you. Do you understand what I'm saying?

Eason again replied, "[y]es, I understand." This colloquy demonstrates that contrary to Eason's current contention, Eason understood the charge. See Reponte, 57 Haw. at 363, 556 P.2d at 583-84 (determining that appellant's "simple

62

reversal of position [four years after entering his plea] was not sufficient to set aside the conviction where it is clear from the record made at the entry of the plea that he voluntarily acknowledged understanding the charge" (citations omitted)).

Fourth, Eason's claim that he did not know the nature of the charges against him is also without merit because as early as the preliminary District Court hearing in April of 2003, Eason was informed about the nature of the charges against him, including the sentencing enhancement.  Eason was present for the two-day preliminary hearing, which involved multiple witnesses, including the officer who took Eason's confession and the medical examiner who performed the autopsy on Hackmeyer's remains.  Eason's prior counsel argued that there was no showing in this case that the murder was especially heinous, and there was not sufficient evidence for probable cause on the sentencing enhancement.  The District Court, upon finding probable cause existed, stated:

> The Court has considered the evidence presented and will find that the State has presented sufficient evidence to convince a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion that the defendant committed the offense of Murder in the Second Degree in an especially, heinous, atrocious, and/or cruel manner manifesting exceptional depravity.
>
> The description of the injuries as provided by [the medical examiner] indicated several blows to the victim's head and the defendant's own statement included that he grabbed his torque wrench from within his vehicle, struck the decedent five to six times on the top of the head.  He moved his body.  At that time the decedent was alive,

> breathing hard, and looking at him. He left -- he held him by his left leg and dragged him and left departing with words, "How dare you threaten my family."
>
> I think there are some indications here that this murder was committed in an especially heinous, atrocious, and/or cruel [manner] manifesting exceptional depravity.

These transcripts show that almost a year before the change of plea hearing, Eason was made aware of the difference between a charge of murder in the second degree with and without the sentencing enhancement.

Olson also testified in the Rule 40 Court that he had explained to Eason the difference between heinous-and-cruel murder and murder without the enhancement.

Fifth, Ret. Judge Ibarra's Certificate stated that he "would not have allowed defendant to plead 'no contest' to any crime unless convinced that he knowingly, voluntarily, and intelligently entered the plea with an understanding of the consequences of his plea and his constitutional rights."

Lastly, we examine Eason's change of plea form. On March 31, 2004, Eason signed the change of plea form, acknowledging it was reviewed with him. Paragraph 11 of the form states: "I am signing this Guilty/No Contest Plea form after I have gone over all of it with my lawyer. I know I will not be permitted to withdraw my plea." In State v. Pedro, 149 Hawai'i 256, 488 P.3d 1235 (2021), this court stated "[a] defendant's signature on Form K, the standard change of plea

form, does not by itself render a plea constitutionally valid. But a signed Form K document <u>does tend to show a plea was proper and its implications understood</u>." <u>Id.</u> at 272, 488 P.3d at 1251 (emphasis added) (citation omitted). Here, the change of plea form, along with the aforementioned records, provide sufficient support for the conclusion that Eason entered his plea voluntarily, knowingly, and intelligently.

Eason claims he did not understand the nature of the charges against him. Paragraph 2 of the plea form indicates he received a written copy of the original charges, the charges were explained to him, and he understood the original charges against him.

Eason asserts he did not enter his plea voluntarily. Paragraph 4 of the change of plea form indicates otherwise, as it states: "I plead of my own free will. No one is pressuring me or threatening me or any other person to force me to plead. I am not taking the blame or pleading to protect another person from prosecution."

Although Eason claims he did not know the rights he would lose by pleading no contest, the change of plea form provides this information. Eason specifically claims he did not know that he was giving up his right to a jury trial, but paragraph 5 of the form clearly states:

> I know I have the right to plead not guilty and have a
> speedy and public trial by jury or by the court. I know in

> a trial the government is required to prove my guilt beyond a reasonable doubt.  I know I can see, hear, and question witnesses who testify against me, and that I may call my own witnesses to testify for me at trial.  I understand I have the right to take the stand to testify and I have the right not to testify at trial.  I know by pleading I give up the right to file any pre-trial motions, and I give up the right to a trial and may be found guilty and sentenced without a trial of any kind.  I also give up the right to appeal anything that has happened in this case to date.

(Emphasis added.)

Similarly, Eason claims he did not know or understand what sentence he would receive as a consequence of his plea and that paragraph 6 was confusing because the form states he could receive "any of the following penalties," including "probation with up to one year of imprisonment and other terms and conditions."  Despite the boilerplate inclusion of penalties, paragraph 6 also states: "I understand that the court may impose any of the following penalties for the offense(s) to which I now plead: the maximum term of imprisonment, any extended term of imprisonment, and any mandatory minimum term of imprisonment specified above[.]"  (Emphasis added.)  The top of the form clearly sets forth that the maximum imprisonment was "Life Imprisonment with the possibility of parole."  The form also stated separately: "My sentence will be life with the possibility of parole."  The form further states, in handwriting: "The State will ask that the Parol [sic] Board set a minimum at the first hearing."

In sum, the record in this case contains ample evidence that Eason entered his no contest plea voluntarily, knowingly, and understandingly.  Eason did not carry his burden on his Fifth Petition to establish his claim for relief.

## IV.   CONCLUSION

Based on the foregoing, we vacate the Rule 40 Court's Final Judgment, entered on July 26, 2023.  We reinstate the Judgment of Conviction and Sentence against Eason entered on June 17, 2004.

Charles E. Murray, III
Deputy Prosecuting Attorney
for respondent-appellant

Catherine E. Gibson
for petitioner-appellee

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Lisa M. Ginoza

/s/ Vladimir P. Devens

